# TEXAS v. BROWN

No. 81–419.  Argued January 12, 1983—Decided April 19, 1983

JUSTICE REHNQUIST, joined by THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE O'CONNOR, concluded that the police officer did not violate the Fourth Amendment in seizing the green balloon from respondent's automobile.  The plain-view doctrine provides grounds for

a warrantless seizure of a suspicious item when the officer's access to the item has some prior justification under the Fourth Amendment. This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property. Here, the officer's initial stop of respondent's vehicle was valid, and his actions in shining his flashlight into the car and changing his position to see what was inside did not violate any Fourth Amendment rights. The "immediately apparent" language in *Coolidge, supra,* does not establish a requirement that a police officer "know" that certain items are contraband or evidence of a crime. "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton* v. *New York,* 445 U. S. 573, 587. Probable cause is a flexible, common-sense standard, merely requiring that the facts available to the officer would warrant a man of reasonable caution to believe that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. In view of the police officer's testimony here, corroborated by that of the police department chemist, as to the common use of balloons in packaging narcotics, the officer had probable cause to believe that the balloon contained an illicit substance. Moreover, the requirement of the plain-view doctrine under *Coolidge, supra,* that the officer must discover incriminating evidence "inadvertently," without knowing in advance the location of the particular evidence and intending to seize it by use of the doctrine as a pretext, was no bar to the seizure here. Pp. 735–744.

JUSTICE POWELL, joined by JUSTICE BLACKMUN, concurring in the judgment, concluded that the articulation in *Coolidge, supra,* of the plain-view exception to the Warrant Clause requirements of the Fourth Amendment is dispositive of the issue here. Respondent conceded that the officer's initial intrusion was lawful and that the discovery of the tied-off balloon was inadvertent in that it was observed in the course of a lawful inspection of the front seat area of the automobile. If probable cause must be shown to justify the seizure, it existed here, in light of the evidence that tied-off balloons are common containers for carrying illegal narcotics. Moreover, a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person. Pp. 744–746.

JUSTICE STEVENS, joined by JUSTICE BRENNAN and JUSTICE MARSHALL, concurring in the judgment, concluded that under the "plain view" exception to the Fourth Amendment's warrant requirement the officer's warrantless temporary seizure of the balloon was proper, but that before the balloon's contents could be used as evidence, the State

had to justify opening it without a warrant, a question that remains open to the state court on remand.  Pp. 747–751.

REHNQUIST, J., announced the judgment of the Court and delivered an opinion, in which BURGER, C. J., and WHITE and O'CONNOR, JJ., joined. WHITE, J., filed a concurring opinion, *post*, p. 744.  POWELL, J., filed an opinion concurring in the judgment, in which BLACKMUN, J., joined, *post*, p. 744.  STEVENS, J., filed an opinion concurring in the judgment, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 747.

*C. Chris Marshall* argued the cause for petitioner.  With him on the briefs were *Tim Curry, L. T. Wilson,* and *Stephen R. Chaney.*

*Allan K. Butcher* argued the cause for respondent.  With him on the brief was *J. Don Carter.**

JUSTICE REHNQUIST announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE O'CONNOR joined.

Respondent Clifford James Brown was convicted in the District Court of Tarrant County, Tex., for possession of heroin in violation of state law.  The Texas Court of Criminal Appeals reversed his conviction, holding that certain evidence should have been suppressed because it was obtained in violation of the Fourth Amendment to the United States Constitution.[1]  617 S. W. 2d 196.  That court rejected the

---

*Solicitor General Lee, Assistant Attorney General Jensen, Deputy Solicitor General Frey,* and *Joshua I. Schwartz* filed a brief for the United States as *amicus curiae* urging reversal.

[1] Brown argues that the decision below rested on an independent and adequate state ground, and therefore that this Court lacks jurisdiction.  *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 210 (1935).  The position is untenable.  The opinion of the Texas Court of Criminal Appeals rests squarely on the interpretation of the Fourth Amendment to the United States Constitution in *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971), and on Texas cases interpreting that decision, *e. g., Howard* v. *State,* 599 S. W. 2d 597 (Tex. Crim. App. 1979); *DeLao* v. *State,* 550 S. W. 2d 289 (Tex. Crim. App. 1977); *Duncan* v. *State,* 549 S. W. 2d 730 (Tex. Crim. App. 1977); and *Nicholas* v. *State,* 502 S. W. 2d 169 (Tex. Crim. App. 1973).  The only men-

State's contention that the so-called "plain view" doctrine justified the police seizure. Because of apparent uncertainty concerning the scope and applicability of this doctrine, we granted certiorari, 457 U. S. 1116, and now reverse the judgment of the Court of Criminal Appeals.

On a summer evening in June 1979, Tom Maples, an officer of the Fort Worth police force, assisted in setting up a routine driver's license checkpoint on East Allen Street in that city. Shortly before midnight Maples stopped an automobile driven by respondent Brown, who was alone. Standing alongside the driver's window of Brown's car, Maples asked him for his driver's license. At roughly the same time, Maples shined his flashlight into the car and saw Brown withdraw his right hand from his right pants pocket. Caught between the two middle fingers of the hand was an opaque, green party balloon, knotted about one-half inch from the tip. Brown let the balloon fall to the seat beside his leg, and then reached across the passenger seat and opened the glove compartment.

---

tion of the Texas Constitution occurs in a summary of Brown's contentions at the outset of the lower court's opinion.

Brown relies principally on *Howard* v. *State, supra,* and *Duncan* v. *State, supra.* Neither decision supports the proposition that the Texas Court of Criminal Appeals based its decision upon state law. In *Howard,* the State argued that the plain-view doctrine justified the seizure of a closed translucent medicine jar from an automobile. The Court of Criminal Appeals rejected the claim, relying on *Coolidge* v. *New Hampshire, supra,* and stating that the State's arguments "cannot be squared with the Supreme Court's interpretation of the plain view doctrine." 599 S. W. 2d, at 602. The court also relied on *Thomas* v. *State,* 572 S. W. 2d 507 (Tex. Crim. App. 1976), which it characterized as "[f]ollowing the teachings of *Coolidge* v. *New Hampshire*." 599 S. W. 2d, at 602. An additional opinion of the court on the State's motion for rehearing merely elaborated upon the application of the plain-view doctrine set forth in the court's original opinion. Similarly, in *Duncan,* the Court of Criminal Appeals rejected the State's reliance on the plain-view theory, citing to *Coolidge* for a statement of the applicable law, as well as to *Nicholas* v. *State, supra.* Like the court's other decisions in the area, *Nicholas* relied only on *Coolidge.*

Because of his previous experience in arrests for drug offenses, Maples testified that he was aware that narcotics frequently were packaged in balloons like the one in Brown's hand. When he saw the balloon, Maples shifted his position in order to obtain a better view of the interior of the glove compartment. He noticed that it contained several small plastic vials, quantities of loose white powder, and an open bag of party balloons. After rummaging briefly through the glove compartment, Brown told Maples that he had no driver's license in his possession. Maples then instructed him to get out of the car and stand at its rear. Brown complied, and, before following him to the rear of the car, Maples reached into the car and picked up the green balloon; there seemed to be a sort of powdery substance within the tied-off portion of the balloon.

Maples then displayed the balloon to a fellow officer who indicated that he "understood the situation." The two officers then advised Brown that he was under arrest.[2] They

---

[2] It is not clear on the record before us when Brown was arrested. The Court of Criminal Appeals stated, at one point in its opinion, that it did not question "the propriety of the arrest since appellant failed to produce a driver's license." 617 S. W. 2d 196, 200. This statement might be read to suggest that Brown was arrested upon his failure to produce a license, instead of at some point following seizure of the balloon from the car. The transcript of the suppression hearing, however, indicates rather clearly that Brown was not formally arrested until after seizure of the balloon. App. 28–31. In the face of such indications, we decline to interpret the above-quoted clause from the Court of Criminal Appeals' opinion as evidencing a belief that an arrest occurred prior to seizure of the balloon. Rather, we think it likely that the court was simply reasoning that Brown's arrest, whenever it may have taken place, was justified because of his failure to produce a driver's license.

We do not address the argument that seizure of the balloon would have been justified under *New York* v. *Belton,* 453 U. S. 454 (1981), which permits warrantless searches of the passenger compartment of an automobile incident to an arrest, because of the absence of clear factual findings regarding the time at which, and the reason for which, Brown was arrested and because the lower court was not able to consider that decision.

also conducted an on-the-scene inventory of Brown's car, discovering several plastic bags containing a green leafy substance and a large bottle of milk sugar. These items, like the balloon, were seized by the officers. At the suppression hearing conducted by the District Court, a police department chemist testified that he had examined the substance in the balloon seized by Maples and determined that it was heroin. He also testified that narcotics frequently were packaged in ordinary party balloons.

The Court of Criminal Appeals, discussing the Fourth Amendment issue, observed that "'plain view *alone* is never enough to justify the warrantless seizure of evidence.'" 617 S. W. 2d, at 200, quoting *Coolidge* v. *New Hampshire*, 403 U. S. 443, 468 (1971) (opinion of Stewart, J., joined by Douglas, BRENNAN, and MARSHALL, JJ.) It further concluded that "Officer Maples had to *know* that 'incriminatory evidence was before him when he seized the balloon.'" 617 S. W. 2d, at 200 (emphasis supplied), quoting *DeLao* v. *State*, 550 S. W. 2d 289, 291 (Tex. Crim. App. 1977). On the State's petition for rehearing, three judges dissented, stating their view that "[t]he issue turns on whether an officer, relying on years of practical experience and knowledge commonly accepted, has probable cause to seize the balloon in plain view." 617 S. W. 2d, at 201.

Because the "plain view" doctrine generally is invoked in conjunction with other Fourth Amendment principles, such as those relating to warrants, probable cause, and search incident to arrest, we rehearse briefly these better understood principles of Fourth Amendment law. That Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures, and requires the existence of probable cause before a warrant shall issue. Our cases hold that procedure by way of a warrant is preferred, although in a wide range of diverse situations we have recognized flexible, common-sense exceptions to this requirement. See, *e. g., Warden* v. *Hayden,* 387 U. S. 294 (1967)

(hot pursuit); *United States* v. *Jeffers*, 342 U. S. 48, 51–52 (1951) (exigent circumstances); *United States* v. *Ross*, 456 U. S. 798 (1982) (automobile search); *Chimel* v. *California*, 395 U. S. 752 (1969), *United States* v. *Robinson*, 414 U. S. 218 (1973), and *New York* v. *Belton*, 453 U. S. 454 (1981) (search of person and surrounding area incident to arrest); *Almeida-Sanchez* v. *United States*, 413 U. S. 266 (1973) (search at border or "functional equivalent"); *Zap* v. *United States*, 328 U. S. 624, 630 (1946) (consent). We have also held to be permissible intrusions less severe than full-scale searches or seizures without the necessity of a warrant. See, *e. g., Terry* v. *Ohio*, 392 U. S. 1 (1968) (stop and frisk); *United States* v. *Brignoni-Ponce*, 422 U. S. 873 (1975) (seizure for questioning); *Delaware* v. *Prouse*, 440 U. S. 648 (1979) (roadblock). One frequently mentioned "exception to the warrant requirement," *Coolidge* v. *New Hampshire*, *supra*, at 456, is the so-called "plain view" doctrine, relied upon by the State in this case.

While conceding that the green balloon seized by Officer Maples was clearly visible to him, the Court of Criminal Appeals held that the State might not avail itself of the "plain view" doctrine. That court said:

> "For the plain view doctrine to apply, not only must the officer be legitimately in a position to view the object, but it must be immediately apparent to the police that they have evidence before them. This 'immediately apparent' aspect is central to the plain view exception and is here relied upon by appellant. [Citation omitted.] In this case then, Officer Maples had to know that 'incriminatory evidence was before him when he seized the balloon.'" 617 S. W. 2d, at 200.

The Court of Criminal Appeals based its conclusion primarily on the plurality portion of the opinion of this Court in *Coolidge* v. *New Hampshire*, *supra*. In the *Coolidge* plurality's view, the "plain view" doctrine permits the warrantless seizure by police of private possessions where three require-

ments are satisfied.[3]  First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area.  *Id.*, at 465–468.  Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext.  *Id.*, at 470.  Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.  *Id.*, at 466.  While the lower courts generally have applied the *Coolidge* plurality's discussion of "plain view," it has never been expressly adopted by a majority of this Court.  On the contrary, the plurality's formulation was sharply criticized at the time, see, *Coolidge* v. *New Hampshire*, 403 U. S., at 506 (Black, J., dissenting); *id.*, at 516–521 (WHITE, J., dissenting).  While not a binding precedent, as the considered opinion of four Members of this Court it should obviously be the point of reference for further discussion of the issue.

The *Coolidge* plurality observed: "it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure," simply as "the normal concomitant of any search, legal or illegal."  *Id.*, at 465.  The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.  The *Coolidge* plurality, while following this approach to "plain

---

[3] The plurality also remarked that "plain view *alone* is never enough to justify the warrantless seizure of evidence."  403 U. S., at 468.  The court below appeared to understand this phrase to impose an independent limitation upon the scope of the plain-view doctrine articulated in *Coolidge*.  The context in which the plurality used the phrase, however, indicates that it was merely a rephrasing of its conclusion, discussed below, that in order for the plain-view doctrine to apply, a police officer must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a "plain view."

view," characterized it as an independent exception to the warrant requirement. At least from an analytical perspective, this description may be somewhat inaccurate. We recognized in *Payton* v. *New York*, 445 U. S. 573, 587 (1980), the well-settled rule that "objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." A different situation is presented, however, when the property in open view is "'situated on private premises to which access is not otherwise available for the seizing officer.'" *Ibid.*, quoting *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338, 354 (1977). As these cases indicate, "plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment.[4] "Plain view" is perhaps better understood, therefore, not as an independent "exception" to the Warrant

---

[4] Thus, police may perceive an object while executing a search warrant, or they may come across an item while acting pursuant to some exception to the Warrant Clause, *e. g.*, *Warden* v. *Hayden*, 387 U. S. 294 (1967); *Terry* v. *Ohio*, 392 U. S. 1 (1968). Alternatively, police may need no justification under the Fourth Amendment for their access to an item, such as when property is left in a public place, see *Payton* v. *New York*, 445 U. S. 573, 587 (1980).

It is important to distinguish "plain view," as used in *Coolidge* to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search, see *infra*, at 740; *Katz* v. *United States*, 389 U. S. 347 (1967), the former generally does implicate the Amendment's limitations upon seizures of personal property. The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity. In turn, these levels of suspicion may, in some cases, see, *e. g.*, *Terry* v. *Ohio*, *supra*; *United States* v. *Ross*, 456 U. S. 798 (1982), justify police conduct affording them access to a particular item.

Clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

The principle is grounded on the recognition that when a police officer has observed an object in "plain view," the owner's remaining interests in the object are merely those of possession and ownership, see *Coolidge* v. *New Hampshire*, *supra*, at 515 (WHITE, J., dissenting). Likewise, it reflects the fact that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a "needless inconvenience," 403 U. S., at 468, that might involve danger to the police and public. *Ibid.* We have said previously that "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on . . . Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware* v. *Prouse*, 440 U. S., at 654. In light of the private and governmental interests just outlined, our decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately. See *Marron* v. *United States*, 275 U. S. 192 (1927); *Go-Bart Importing Co.* v. *United States*, 282 U. S. 344, 358 (1931); *United States* v. *Lefkowitz*, 285 U. S. 452, 465 (1932); *Harris* v. *United States*, 390 U. S. 234, 236 (1968); *Frazier* v. *Cupp*, 394 U. S. 731 (1969). This rule merely reflects an application of the Fourth Amendment's central requirement of reasonableness to the law governing seizures of property.

Applying these principles, we conclude that Officer Maples properly seized the green balloon from Brown's automobile. The Court of Criminal Appeals stated that it did not "question . . . the validity of the officer's initial stop of appellant's vehicle as a part of a license check," 617 S. W. 2d, at 200, and we agree. *Delaware* v. *Prouse, supra*, at 654–655. It is likewise beyond dispute that Maples' action in shining his

flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States* v. *Lee*, 274 U. S. 559, 563 (1927): "[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.[5]

Likewise, the fact that Maples "changed [his] position" and "bent down at an angle so [he] could see what was inside" Brown's car, App. 16, is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason Maples should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy, *Katz* v. *United States*, 389 U. S. 347, 361 (1967) (Harlan, J., concurring); *Smith* v. *Maryland*, 442 U. S. 735, 739–745 (1979), shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled Maples to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.

---

[5] *E. g., United States* v. *Chesher*, 678 F. 2d 1353, 1356–1357, n. 2 (CA9 1982); *United States* v. *Ocampo*, 650 F. 2d 421, 427 (CA2 1981); *United States* v. *Pugh*, 566 F. 2d 626, 627, n. 2 (CA8 1977), cert. denied, 435 U. S. 1010 (1978); *United States* v. *Coplen*, 541 F. 2d 211 (CA9 1976), cert. denied, 429 U. S. 1073 (1977); *United States* v. *Lara*, 517 F. 2d 209 (CA5 1975); *United States* v. *Johnson*, 506 F. 2d 674 (CA8 1974), cert. denied, 421 U. S. 917 (1975); *United States* v. *Booker*, 461 F. 2d 990, 992 (CA6 1972); *United States* v. *Hanahan*, 442 F. 2d 649 (CA7 1971); *People* v. *Waits*, 196 Colo. 35, 580 P. 2d 391 (1978); *Redd* v. *State*, 240 Ga. 753, 243 S. E. 2d 16 (1978); *State* v. *Chattley*, 390 A. 2d 472 (Me. 1978); *State* v. *Vohnoutka*, 292 N. W. 2d 756 (Minn. 1980); *Dick* v. *State*, 596 P. 2d 1265 (Okla. Crim. App. 1979); *State* v. *Miller*, 45 Ore. App. 407, 608 P. 2d 595 (1980); *Albo* v. *State*, 379 So. 2d 648 (Fla. 1980).

Thus there can be no dispute here as to the presence of the first of the three requirements held necessary by the *Coolidge* plurality to invoke the "plain view" doctrine.[6] But the Court of Criminal Appeals, as we have noted, felt the State's case ran aground on the requirement that the incriminating nature of the items be "immediately apparent" to the police officer. To the Court of Criminal Appeals, this apparently meant that the officer must be possessed of near certainty as to the seizable nature of the items. Decisions by this Court since *Coolidge* indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the "plain view" doctrine.

In *Colorado* v. *Bannister*, 449 U. S. 1, 3–4 (1980), we applied what was in substance the plain-view doctrine to an officer's seizure of evidence from an automobile. *Id.*, at 4, n. 4. The officer noticed that the occupants of the automobile matched a description of persons suspected of a theft and that auto parts in the open glove compartment of the car similarly resembled ones reported stolen. The Court held that these facts supplied the officer with "probable cause," *id.*, at 4, and therefore, that he could seize the incriminating items from the car without a warrant. Plainly, the Court did not view the "immediately apparent" language of *Coolidge* as establishing any requirement that a police officer "know" that certain items are contraband or evidence of a crime. Indeed, *Colorado* v. *Bannister, supra,* was merely an application of the rule, set forth in *Payton* v. *New York*, 445 U. S. 573 (1980), that "[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property*

---

[6] While seizure of the balloon required a warrantless, physical intrusion into Brown's automobile, this was proper, assuming that the remaining requirements of the plain-view doctrine were satisfied. *United States* v. *Ross,* 456 U. S. 798 (1982).

*with criminal activity." Id.*, at 587 (emphasis added). We think this statement of the rule from *Payton, supra,* requiring probable cause for seizure in the ordinary case,[7] is consistent with the Fourth Amendment and we reaffirm it here.

As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll* v. *United States,* 267 U. S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar* v. *United States,* 338 U. S. 160, 176 (1949). Moreover, our observation in *United States* v. *Cortez,* 449 U. S. 411, 418 (1981), regarding "particularized suspicion," is equally applicable to the probable-cause requirement:

> "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

With these considerations in mind it is plain that Officer Maples possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance. Maples testified that he was aware, both from his participation in previous narcotics arrests and from discussions with other officers,

---

[7] We need not address whether, in some circumstances, a degree of suspicion lower than probable cause would be sufficient basis for a seizure in certain cases.

that balloons tied in the manner of the one possessed by Brown were frequently used to carry narcotics. This testimony was corroborated by that of a police department chemist who noted that it was "common" for balloons to be used in packaging narcotics. In addition, Maples was able to observe the contents of the glove compartment of Brown's car, which revealed further suggestions that Brown was engaged in activities that might involve possession of illicit substances. The fact that Maples could not see through the opaque fabric of the balloon is all but irrelevant: the distinctive character of the balloon itself spoke volumes as to its contents—particularly to the trained eye of the officer.

In addition to its statement that for seizure of objects in plain view to be justified the basis upon which they might be seized had to be "immediately apparent," and the requirement that the initial intrusion be lawful, both of which requirements we hold were satisfied here, the *Coolidge* plurality also stated that the police must discover incriminating evidence "inadvertently," which is to say, they may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretense. 430 U. S., at 470. Whatever may be the final disposition of the "inadvertence" element of "plain view," [8] it clearly was no bar to the seizure here. The circumstances of this meeting between Maples and Brown give no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in "plain view" in the course of a check for driver's licenses. Here, although the officers no doubt had an expectation that some of the cars they halted on East Allen Street—which was part of a "medium" area of narcotics traffic, App. 33—would contain narcotics or para-

---

[8] See *State* v. *King*, 191 N. W. 2d 650, 655 (Iowa 1971); *United States* v. *Santana*, 485 F. 2d 365, 369–370 (CA2 1973), cert. denied, 415 U. S. 931 (1974); *United States* v. *Bradshaw*, 490 F. 2d 1097, 1101, n. 3 (CA4), cert. denied, 419 U. S. 895 (1974); *North* v. *Superior Court*, 8 Cal. 3d 301, 306–307, 502 P. 2d 1305, 1308 (1972).

phernalia, there is no indication in the record that they had anything beyond this generalized expectation. Likewise, there is no indication that Maples had any reason to believe that any particular object would be in Brown's glove compartment or elsewhere in his automobile. The "inadvertence" requirement of "plain view," properly understood, was no bar to the seizure here.

Maples lawfully viewed the green balloon in the interior of Brown's car, and had probable cause to believe that it was subject to seizure under the Fourth Amendment. The judgment of the Texas Court of Criminal Appeals is accordingly reversed, and the case is remanded for further proceedings.

*It is so ordered.*

JUSTICE WHITE, concurring.

While joining JUSTICE REHNQUIST's plurality opinion, I continue to disagree with the views of four Justices in *Coolidge* v. *New Hampshire*, 403 U. S. 443, 469 (1971), that plain-view seizures are valid only if the viewing is "inadvertent." Nor does the Court purport to endorse that view in its opinions today.

JUSTICE POWELL, with whom JUSTICE BLACKMUN joins, concurring in the judgment.

I concur in the judgment, and also agree with much of the plurality's opinion relating to the application in this case of the plain-view exception to the Warrant Clause. But I do not join the plurality's opinion because it goes well beyond the application of the exception. As I read the opinion, it appears to accord less significance to the Warrant Clause of the Fourth Amendment than is justified by the language and purpose of that Amendment. In dissent in *United States* v. *Rabinowitz*, 339 U. S. 56 (1950), Justice Frankfurter wrote eloquently:

"One cannot wrench 'unreasonable searches' from the text and context and historic content of the Fourth

Amendment. . . . When [that] Amendment outlawed 'unreasonable searches' and then went on to define the very restricted authority that even a search warrant issued by a magistrate could give, the framers said with all the clarity of the gloss of history that a search is 'unreasonable' unless a warrant authorizes it, barring only exceptions justified by absolute necessity." *Id.*, at 70.

To be sure, the opinions of this Court in Warrant Clause cases have not always been consistent. They have reflected disagreement among Justices as to the extent to which the Clause defines the reasonableness standard of the Amendment. In one of my earliest opinions, *United States* v. *United States District Court*, 407 U. S. 297 (1972), I cited Justice Frankfurter's *Rabinowitz* dissent in emphasizing the importance of the Warrant Clause. 407 U. S., at 316. Although I would not say that exceptions can be justified only by "absolute necessity,"[1] I stated that they were "few in number and carefully delineated." *Id.*, at 318. This has continued to be my view, as expressed recently in *Arkansas* v. *Sanders*, 442 U. S. 753, 759 (1979). It is a view frequently repeated by this Court. See, *e. g.*, *United States* v. *Ross*, 456 U. S. 798, 825 (1982); *Mincey* v. *Arizona*, 437 U. S. 385, 390 (1978) (unanimous decision); *Vale* v. *Lousiana*, 399 U. S. 30, 34 (1970); *Katz* v. *United States*, 389 U. S. 347, 357 (1967); *Camara* v. *Municipal Court*, 387 U. S. 523, 528–529 (1967); *Jones* v. *United States*, 357 U. S. 493, 499 (1958).

This case involves an application of the plain-view exception, first addressed at some length by the plurality portion of the opinion in *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971). The plurality today states that this opinion "has

---

[1] I have considered the automobile exception, for example, as one clearly justified because of the nature of the vehicle. See, *e. g.*, *Arkansas* v. *Sanders*, 442 U. S. 753, 760–761 (1979); *United States* v. *Martinez-Fuerte*, 428 U. S. 543, 561–562 (1976); *Almeida-Sanchez* v. *United States*, 413 U. S. 266, 279 (1973) (POWELL, J., concurring).

never been expressly adopted by a majority of this Court." *Ante,* at 737. Whatever my view might have been when *Coolidge* was decided, I see no reason at this late date to imply criticism of its articulation of this exception. It has been accepted generally for over a decade.[2] Moreover, it seems unnecessary to cast doubt on *Coolidge* in this case. Its plurality formulation is dispositive of the question before us.

Respondent Brown does not dispute that Officer Maples' initial intrusion was lawful. Brown also concedes that the discovery of the tied-off balloon was inadvertent in that it was observed in the course of a lawful inspection of the front seat area of the automobile. If probable cause must be shown, as the *Payton* dicta suggest, see *Payton* v. *New York,* 445 U. S. 573, 587 (1980), I think it is clear that it existed here. Officer Maples testified that he previously had made an arrest in a case where narcotics were carried in tied-off balloons similar to the one at issue here. Other officers had told him of such cases. Even if it were not generally known that a balloon is a common container for carrying illegal narcotics, we have recognized that a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person. *United States* v. *Cortez,* 449 U. S. 411, 418 (1981). We are not advised of any innocent item that is commonly carried in uninflated, tied-off balloons such as the one Officer Maples seized.

---

[2] See, *e. g., United States* v. *Chesher,* 678 F. 2d 1353, 1356–1357 (CA9 1982); *United States* v. *Irizarry,* 673 F. 2d 554, 558–560 (CA1 1982); *United States* v. *Tolerton,* 669 F. 2d 652, 653–655 (CA10), cert. denied, 456 U. S. 949 (1982); *United States* v. *Antill,* 615 F. 2d 648, 649 (CA5) *(per curiam),* cert. denied, 449 U. S. 866 (1980); *United States* v. *Duckett,* 583 F. 2d 1309, 1313–1314 (CA5 1978); *United States* v. *Williams,* 523 F. 2d 64, 66–67 (CA8 1975), cert. denied, 423 U. S. 1090 (1976); *United States* v. *Truitt,* 521 F. 2d 1174, 1175–1178 (CA6 1975); *United States* v. *Pacelli,* 470 F. 2d 67, 70–72 (CA2 1972), cert. denied, 410 U. S. 983 (1973); *United States* v. *Drew,* 451 F. 2d 230, 232–234 (CA5 1971).

Accordingly, I concur in the judgment as it is consistent with principles established by our prior decisions.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, concurring in the judgment.

The Texas Court of Criminal Appeals held that the warrantless seizure of respondent's balloon could not be justified under the plain-view doctrine because incriminating evidence was not immediately apparent. This Court reverses, holding that even though the contents of the balloon were not visible to the officer, incriminating evidence was immediately apparent because he had probable cause to believe the balloon contained an illicit substance. I agree with the Court that contraband need not be visible in order for a plain-view seizure to be justified. I therefore concur in the conclusion that the Texas Court interpreted the Fourth Amendment more strictly than is required.

The plurality's explanation of our disposition of this case is, however, incomplete. It gives inadequate consideration to our cases holding that a closed container may not be opened without a warrant, even when the container is in plain view and the officer has probable cause to believe contraband is concealed within. *United States* v. *Chadwick*, 433 U. S. 1 (1977); *Arkansas* v. *Sanders*, 442 U. S. 753 (1979); *United States* v. *Ross*, 456 U. S. 798, 811–812 (1982). Final determination of whether the trial court properly denied the suppression motion requires a more complete understanding of the plain-view doctrine, as well as the answer to a factual inquiry that remains open to the state court on remand.

Although our Fourth Amendment cases sometimes refer indiscriminately to searches and seizures, there are important differences between the two that are relevant to the plain-view doctrine. The Amendment protects two different interests of the citizen—the interest in retaining possession of property and the interest in maintaining personal privacy. A seizure threatens the former, a search the latter. As a matter of timing, a seizure is usually preceded by a search,

but when a container is involved the converse is often true. Significantly, the two protected interests are not always present to the same extent; for example, the seizure of a locked suitcase does not necessarily compromise the secrecy of its contents, and the search of a stopped vehicle does not necessarily deprive its owner of possession.

An object may be considered to be "in plain view" if it can be seized without compromising any interest in privacy. Since seizure of such an object threatens only the interest in possession, circumstances diminishing that interest may justify exceptions to the Fourth Amendment's usual requirements. Thus, if an item has been abandoned, neither Fourth Amendment interest is implicated, and neither probable cause nor a warrant is necessary to justify seizure. See, *e. g.*, *Abel* v. *United States*, 362 U. S. 217, 241 (1960); cf. *United States* v. *Lisk*, 522 F. 2d 228, 230 (CA7 1975). And if an officer has probable cause to believe that a publicly situated item is associated with criminal activity, the interest in possession is outweighed by the risk that such an item might disappear or be put to its intended use before a warrant could be obtained. The officer may therefore seize it without a warrant. See *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338, 354 (1975); *Payton* v. *New York*, 445 U. S. 573, 587 (1980). The "plain view" exception to the warrant requirement is easy to understand and to apply in cases in which no search is made and no intrusion on privacy occurs.

The Court's more difficult plain-view cases, however, have regularly arisen in two contexts that link the seizure with a prior or subsequent search. The first is the situation in which an officer who is executing a valid search for one item seizes a different item. The Court has been sensitive to the danger inherent in such a situation that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will. That danger is averted by strict attention to two of the core requirements of plain view: seizing the item must entail no significant additional invasion of privacy, and

at the time of seizure the officer must have probable cause to connect the item with criminal behavior. See *United States v. Lefkowitz*, 285 U. S. 452, 465 (1932); cf. *Coolidge* v. *New Hampshire*, 403 U. S. 443, 465–466 (1971).

The second familiar context is the situation in which an officer comes upon a container in plain view and wants both to seize it and to examine its contents. In recent years, the Court has spoken at some length about the latter act, *e. g.*, *Ross, supra; Chadwick, supra; Sanders, supra*, emphasizing the Fourth Amendment privacy values implicated whenever a container is opened. In this case, however, both the search of a container (the balloon) and the antecedent seizure are open to challenge.[1] In that regard, it more closely resembles *Coolidge, supra.*[2] All of these cases, however, demonstrate that the constitutionality of a container search is not automatically determined by the constitutionality of the prior seizure. See *Chadwick*, 433 U. S., at 13–14, n. 8; *Sanders*, 442 U. S., at 761–762. Separate inquiries are necessary, taking into account the separate interests at stake.

If a movable container is in plain view, seizure does not implicate any privacy interests. Therefore, if there is probable cause to believe it contains contraband, the owner's possessory interest in the container must yield to society's interest in making sure that the contraband does not vanish during

---

[1] In defending the Texas Court of Criminal Appeals' judgment before this Court, the respondent did not rely upon a challenge to the search of the balloon. I nevertheless believe it is necessary to elaborate upon the distinction between the balloon's search and its seizure in this case in order to clarify what the Court does and does not hold today. Moreover, it is not clear to me whether, as a matter of Texas law, the respondent would still be permitted to present an argument that the evidence should be suppressed because it was obtained after a search of the balloon. See n. 3, *infra*.

[2] Although *Coolidge* is not always thought of as a container case, the Court was required to confront New Hampshire's separate attempts to justify both its warrantless seizure of a container, an immobilized automobile, see 403 U. S., at 464–473, and its subsequent warrantless searches of the container's interior, see *id.*, at 458–464.

the time it would take to obtain a warrant. The item may be seized temporarily. It does not follow, however, that the container may be opened on the spot. Once the container is in custody, there is no risk that evidence will be destroyed. Some inconvenience to the officer is entailed by requiring him to obtain a warrant before opening the container, but that alone does not excuse the duty to go before a neutral magistrate. *Johnson* v. *United States,* 333 U. S. 10, 15 (1948); *McDonald* v. *United States,* 335 U. S. 451, 455 (1948). As JUSTICE POWELL emphasizes, *ante,* at 744–745, the Warrant Clause embodies our government's historical commitment to bear the burden of inconvenience. Exigent circumstances must be shown before the Constitution will entrust an individual's privacy to the judgment of a single police officer.

In this case, I have no doubt concerning the propriety of the officer's warrantless seizure of the balloon. For the reasons stated by JUSTICES POWELL and REHNQUIST, I agree that the police officer invaded no privacy interest in order to see the balloon, and that when he saw it he had probable cause to believe it contained drugs. But before the balloon's contents could be used as evidence against the respondent, the State also had to justify opening it without a warrant.[3] I can perceive two potential justifications. First, it is entirely possible that what the officer saw in the car's glove compartment, coupled with his observation of respondent and the contents of his pockets, provided probable cause to believe that contraband was located somewhere in the car—and not merely in the one balloon at issue. If so, then under *United States* v. *Ross,* 456 U. S. 798 (1982), which was not decided until after the Texas Court of Criminal Appeals reviewed this case, it was permissible to examine the contents of any container in the car, including this balloon.

Alternatively, the balloon could be one of those rare single-purpose containers which "by their very nature cannot sup-

---

[3] Arguably, as a matter of Texas law the respondent has waived his right to demand such a justification. That is, of course, an issue for the Texas courts.

port any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Sanders, supra,* at 764–765, n. 13. Whereas a suitcase or a paper bag may contain an almost infinite variety of items, a balloon of this kind might be used only to transport drugs. Viewing it where he did could have given the officer a degree of certainty that is equivalent to the plain view of the heroin itself. If that be true, I would conclude that the plain-view doctrine supports the search as well as the seizure even though the contents of the balloon were not actually visible to the officer.[4]

This reasoning leads me to the conclusion that the Fourth Amendment would not require exclusion of the balloon's contents in this case if, but only if, there was probable cause to search the entire vehicle or there was virtual certainty that the balloon contained a controlled substance.[5] Neither of these fact-bound inquiries was made by the Texas courts, and neither should be made by this Court in the first instance. Moreover, it may be that on remand the Texas Court of Criminal Appeals will find those inquiries unnecessary because the respondent may have waived his right to demand them. See n. 3, *supra.* I therefore concur in the judgment.

---

[4] Conversely, the fact that an object is visible does not automatically mean that it is in plain view in the sense that no invasion of privacy is required to seize it. This case does not require elaboration of what the Fourth Amendment demands before an officer may seize a visible item that he could not reach without, for example, entering a private home or destroying a valuable container. See *Taylor* v. *United States,* 286 U. S. 1, 5 (1932).

[5] Sometimes there can be greater certainty about the identity of a substance within a container than about the identity of a substance that is actually visible. One might actually see a white powder without realizing that it is heroin, but be virtually certain a balloon contains such a substance in a particular context. It seems to me that in evaluating whether a person's privacy interests are infringed, "virtual certainty" is a more meaningful indicator than visibility.