UNITED STATES of America,

v.

Joseph L. WILEY and Robert A. Taylor, Defendants.

Crim. No. 87–00242–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 24, 1987.

Steven J. Gillingham, Captain, Judge Advocate General's Corps, Sp. Asst. U.S. Atty., Alexandria, Va., for plaintiff.

Robert S. Powell, Alexandria, Va., for Joseph Wiley.

Denise J. Tassi, Alexandria, Va., for Robert Taylor.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I. *Introduction*

This is a "plain view" doctrine, search and seizure case involving a law enforcement official's use of a flashlight. Procedurally, the case is here on a Rule 7(a)[1] appeal from the Magistrate's decision suppressing both (i) evidence seized from defendant Wiley's vehicle and (ii) statements made by defendants Wiley and Taylor after their arrest. The Magistrate, after a hearing, concluded that the seized evidence and statements were fruits of an unconstitutional arrest and search and must therefore be suppressed. This Court disagrees and reverses.

### II. *Background*

On March 21, 1987, at about 2:30 a.m., Military Police Officers Henry and Johnson spotted a silver Subaru parked at the far end of an overflow parking lot for the Fort Myer non-commissioned officers' club. Two adult males occupied the car. Base policy prohibits loitering in parking lots after dark. In accordance with this policy, Officers Henry and Johnson approached the vehicle to ask the men for identification and to advise them that they must either leave the parking lot or enter the club. At the suppression hearing, Officer Henry testified that as he walked toward the vehicle, he noticed the passenger holding his arms close to his body and looking down, as if he were rolling something. Officer Johnson testified that he saw both men looking down at something.

Upon reaching the car, Officer Henry asked the driver for identification. Joseph L. Wiley, the driver, produced his license and registration without difficulty. Simultaneously, Officer Johnson asked the passenger for identification. The passenger, Robert A. Taylor, also identified himself satisfactorily. Officer Johnson then shined his flashlight around the car, including, in passing, over the ashtray on the dashboard. In the ashtray, both officers observed several small, hand-rolled cigarette butts. Believing the butts to be the remains of marijuana cigarettes ("roaches"),[2] the officers directed defendants to get out of the car and called for Investigator Cyr, a drug expert.[3]

When Investigator Cyr arrived approximately five minutes later, he viewed the butts from outside the car. Based on his experience and the size, shape and appearance of the butts, he concluded that they contained marijuana. After directing the officers to arrest Wiley and Taylor, Cyr entered the car and seized the butts. He determined that the butts had the appearance and odor of marijuana.

While sitting in the car, Investigator Cyr observed a small foil packet in an open console between the front seats. From his undercover drug operations experience, Cyr believed that the packet contained marijuana. He opened the package and smelled its contents. Based on his experience and familiarity with various illicit drugs, he determined that the substance was marijuana laced with PCP. In a man's purse which was lying on the console, Investigator Cyr found a white powdery sub-

---

1. Rule 7(a), Rules of Procedure for the Trial of Misdemeanors, provides, in pertinent part, that a "decision ... by a magistrate which, if made by a judge of the district court, could be appealed by the government ..., shall be subject to an appeal to a judge of the district court." Rule 7(e) provides that the scope of appeal is the same as on an appeal from the district court to a court of appeals.

2. Both officers, by virtue of experience, are familiar with the distinctive appearance of marijuana cigarettes. Officer Henry testified that he had seen many marijuana cigarette butts during his four years of police experience. Similarly, Officer Johnson stated that he had been involved in several cases dealing with marijuana and was familiar with the appearance of roaches.

3. Investigator Cyr's six years of military police service included specialized training in drug enforcement. He is therefore familiar with the appearance and physical characteristics of a number of illegal substances, including marijuana.

stance he believed to be cocaine and some plastic straws, which he knew are commonly used to ingest cocaine. In the back of the car, Cyr discovered a shaving bag which contained drug paraphernalia and a checkbook belonging to defendant Wiley. Cyr discovered another cigarette butt which he believed to be a roach in an ashtray on the back of the console. All of the contraband was seized and was the subject of defendants' suppression motion. Both defendants were charged with possessing marijuana and cocaine in violation of 21 U.S.C. § 844.

Defendants also apparently made incriminating statements during their detention at the base station house after their arrest. They contend that these statements, too, should be excluded as fruits of an illegal arrest. The record of the proceedings below does not reveal the contents of the statements at issue.

## III. *The Merits*

The Magistrate concluded that while the officers' initial contact with defendants was justified by the officers' duty to enforce the base policy against loitering, the use of the flashlight was an unreasonable search. She rejected the United States' argument that the conditions for a valid plain view seizure had been met and held that defendants' arrest, the search of the vehicle and the seizure of the contraband found therein were unlawful. She also found that statements obtained from defendants after their arrest should be suppressed.

The validity of the Magistrate's ruling hinges on whether the discovery of the roaches and their subsequent seizure fell within the plain view doctrine. Under that doctrine, seizure of contraband without a warrant is justified when three requirements are met:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. [*Coolidge v. New Hampshire*, 403 U.S. 443, 465–68, 91 S.Ct. 2022, 2037–39, 29 L.Ed.2d 564 (1971) (plurality opinion)]. Second, the officer must discover incriminating evi-

dence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain view doctrine only as a pretext. [*Id.* at 470, 91 S.Ct. at 2040]. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. [*Id.* at 466, 91 S.Ct. at 2038].

*Texas v. Brown*, 460 U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) (plurality opinion). This Court finds that these three conditions were satisfied and that the seizure of the roaches was proper.

▪ First, there is no question that Officers Henry and Johnson lawfully approached defendants and asked them for identification. From their position outside the vehicle, the officers observed the cigarette butts in the ashtray. They were in plain view. The fact that Officer Johnson used his flashlight to illuminate the interior of the vehicle is irrelevant for Fourth Amendment purposes. *Id.* at 740, 103 S.Ct. at 1542. It makes no difference constitutionally that the stop occurred at night rather than on a bright day. What matters instead is that the contraband was in plain view to officers who were legitimately positioned to see it.

In *Texas v. Brown*, the Supreme Court relied on the plain view doctrine to uphold the seizure of a balloon containing narcotics from the inside of the defendant's vehicle. As the encounter occurred after dark, the officer observed the balloon with the aid of a flashlight. *Id.* at 733, 744, 103 S.Ct. at 1538, 1544. The Court commented that "[n]umerous courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search and thus triggers no Fourth Amendment protection." *Id.* at 740, 103 S.Ct. at 1542. *See also United States v. Dunn*, —— U.S. ——, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987) (shining flashlight through open front of barn did not transform observation into an unreasonable search); *United States v. Booker*, 461 F.2d 990, 992 (6th Cir.1972) (because it would not constitute a search for an officer to observe contraband

through a car window in daylight, it should not constitute a search for the same object to be viewed at night with the aid of a flashlight). The Magistrate's ruling that the use of the flashlight was an unreasonable search is contrary to the Supreme Court's holding in *Texas v. Brown* and is therefore clearly erroneous. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1526 (4th Cir.1984) (findings made in disregard of the applicable legal standard are clearly erroneous).

■ The Magistrate's conclusion that discovery of the roaches was not inadvertent is also clearly erroneous. There is no evidence in the record that the officers knew in advance that they would find roaches in the ashtray, that they intended in advance to seize the roaches or that they used the plain view doctrine as a pretext to search the car.[4] *See Pizzeria Uno Corp.,* 747 F.2d 1522, 1526 (findings without record evidence are clearly erroneous and, even when there is some support, the findings are clearly erroneous where a reviewing court is left with a firm conviction that a mistake has been made).

Conceivably, the officers may have had a generalized expectation that defendants were engaged in drug-related activity. Importantly, however, there is nothing in the record to suggest that the officers' enforcement of the no-loitering policy was a pretext for discovering evidence of a narcotics violation. *See Texas v. Brown,* 460 U.S. 730, 743–44, 103 S.Ct. 1535, 1543–44. Further, there is no indication that the officers had any reason to believe that any particular object would be found in the ashtray or elsewhere in the car. *Id.* at 744, 103 S.Ct. at 1544. The officers' observation of the

roaches was therefore inadvertent within the meaning of *Texas v. Brown* and *Coolidge v. New Hampshire,* 403 U.S. 443, 470, 91 S.Ct. 2022, 2040. *See also United States v. Welsch,* 446 F.2d 220, 223 (10th Cir.1971) (discovery of evidence is not inadvertent only where officer has "preexisting knowledge of the identity and location of an item sufficiently in advance of the seizure" to obtain a warrant).

Finally, the fact that the cigarette butts contained marijuana was immediately apparent. The Supreme Court in *Texas v. Brown* explained that the phrase "immediately apparent" does not mean that the officer must know that the evidence found in plain view is incriminating, but rather that he must possess probable cause to believe that the evidence is incriminating. *Texas v. Brown,* 460 U.S. at 741–42, 103 S.Ct. at 1542–43. In turn,

> Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," ..., that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.

*Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1543 (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). *See also Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). Significant here is the principle that an officer may draw on his training and experience in determining whether there is probable cause to believe that a particular object is contraband. *United States v. Cortez,* 449 U.S.

---

4. In determining that the second prong of the *Texas v. Brown* test had not been met, the Magistrate apparently placed great weight on her belief that Officer Johnson's testimony lacked credibility. She discounted Johnson's explanation that he used the flashlight to make sure that the defendants did not have access to any weapons because he did not use the flashlight until after defendants had identified themselves. Further, she emphasized the fact that while Officer Johnson testified at the suppression hearing that he thought he smelled marijuana from outside the car, he stated in his written report

prepared shortly after the incident that he had not smelled anything suspicious.

Even if this Court were to agree with the Magistrate that these inconsistencies cast serious doubt over all of Johnson's testimony, there is still no basis for finding that Officer Henry's discovery of the roaches was not inadvertent. There is nothing in the record to justify a finding that the stop and use of the plain view doctrine were a pretext for seizing contraband. The Court therefore reverses the Magistrate's ruling that the inadvertence requirement was not met.

411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

■ In this case, Officer Henry stated that he had seen many marijuana cigarette butts during his four years as a police officer and that, upon viewing the butts in the ashtray, he "could bet" on them containing marijuana. Officer Johnson, who has worked on several cases involving marijuana cigarette butts, testified that he suspected that the butts contained marijuana. Based on the appearance of the butts and the officers' training and experience, probable cause existed to believe the butts were roaches at this point in the encounter. In any event, the officers' detention of defendants for the five minutes it took Investigator Cyr to arrive was supported by reasonable suspicion. In *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Court upheld a twenty-minute investigative detention based on reasonable suspicion of marijuana trafficking. *Id.* at 687–88, 105 S.Ct. at 1576.[5] In calling for Investigator Cyr, the officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant[s]." *Id.* at 686, 105 S.Ct. at 1575.

■ Investigator Cyr, based on his experience in the drug enforcement area, stated that after viewing the butts, he concluded that they were roaches because they were very short, tightly drawn, rolled and pinched at the end. In light of the appearance of the butts and the officers' collective knowledge,[6] probable cause existed to arrest defendants and to enter the vehicle to seize the roaches. *See Texas v. Brown*, 460 U.S. at 742–43, 103 S.Ct. at 1543–44 (probable cause existed to believe that a balloon contained narcotics, where officer knew that balloons are frequently used to carry narcotics). Because the Magistrate imposed a higher degree of certainty as to the nature of the butts than is necessary for the application of the plain view doctrine, her finding that the "immediately apparent" requirement had not been met must be reversed.

■ The presence of the roaches in the ashtray provided Investigator Cyr with probable cause to search the entire passenger compartment of the vehicle and any containers found therein for contraband. In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court confirmed that a law enforcement officer with probable cause to believe that a vehicle contains evidence of a crime may search "every part of a vehicle and its contents that may conceal the object of the search." *Id.* at 825, 102 S.Ct. at 2173. The search of the passenger compartment and its contents was also justified as a search incident to a lawful arrest. *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768 (1981). It follows that the statements obtained from defendants should not be suppressed on the ground that the arrest was unlawful. Of course, this Court does not address or decide whether suppression of these statements is warranted on some other ground.

Accordingly, the Magistrate's decision is reversed and the case is remanded for further proceedings not inconsistent with this decision. An appropriate order has been entered.

---

**5.** *See also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**6.** *See United States v. Newton*, 788 F.2d 1392, 1395 (8th Cir.1986) (in determining whether probable cause requirement of plain view doctrine is met, court may consider officers' collective knowledge).