AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

NAPOLEONE LOIA, Defendant

High Court of American Samoa
Trial Division

CR No. 10-90

July 2, 1990

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Barry I. Rose, Assistant Public Defender

On Motion to Suppress:

*Background*

While on patrol on the evening of March 6, 1990, police officers Maifea and Letuli encountered an oncoming vehicle which appeared to be speeding at a curve in Fatumafuti. Officer Maifea noticed through his rear view mirror that the passing vehicle had no tail lights and, after seeking a suitable area in the highway permitting a U-turn, gave chase. The officers eventually found the vehicle they were pursuing in Faga'alu at the L.B.J. Tropical Medical Center, parked and unoccupied next to the emergency clinic entrance. Officer Maifea went immediately into the emergency clinic to look for the driver, while at the same time calling out to his partner, Officer Letuli, to check whether the keys were still in the vehicle. Officer Maifea testified that his concern for the keys was the need to remove the vehicle from the emergency clinic's entrance. Officer Letuli, with the aid of a flashlight, saw that the keys were left in the vehicle. However, he also noticed, in the vehicle's ashtray, paper currency on top of which lay the remains of two hand rolled cigarette butts. The ends of the butts were twisted and they looked like marijuana joints to the officer. He waited at the vehicle until officer Maifea returned and told him about the butts. The latter --- who in the meantime had found the defendant, Napoleone Loia, who admitted driving the vehicle --- also viewed the butts and a decision was made to call for a narcotics agent. Officer Maiava subsequently responded from the narcotics division. He testified that he also viewed the butts, or "roaches," as they were found in the vehicle's astray, removed them, and performed a certain chemical field test. The butts tested positive as marijuana and were seized as incriminating evidence.

The defendant contests the validity of this warrantless seizure as being in violation of his rights against unreasonable search and seizure under article 1, section 5 of the Revised Constitution of American Samoa, and the Fourth and Fourteenth Amendment to the United States

2

Constitution.[1] The government, on the other hand, relies on the "plain-view" doctrine under *Coolidge v. New Hampshire*, 403 U.S.443 (1971), as justifying the warrantless seizure of the butts.

*Discussion*

Under *Coolidge*, "plain-view" provides grounds for the warrantless seizure of private property when three requirements have been satisfied:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.* at 465-468. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. *Id.* at 470. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466.

*Texas v. Brown*, 460 U.S. 730, 737 (1983) (plurality opinion).

Applying these requirements to the facts, we conclude the following: there can be no argument that officers Letuli and Maifea (and for that matter officer Maiava as well) were legitimately in a position from which they viewed the butts. The butts were within plain-view notwithstanding the fact that officers Letuli and Maifea had used flashlights to illuminate the vehicle's interior. As stated by the Supreme Court in *Texas v. Brown*, "the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." *Id.* at 740. Further, the Court stated

---

[1] Our reference to the Fourth and Fourteenth Amendment of the United States Constitution is merely to reiterate defendant's argument. We intimate no views on the Fourteenth Amendment's application, if any, to the territory of American Samoa. *Cf. Ngiraingas v. Sanchez*, 495 U.S. 182, 109 L.Ed 2d 163 (1990). In the context of 42 USC § 1983 — originally enacted as § 1 of the Civil Rights Act of 1871 to enforce the provisions of the Fourteenth Amendment — "Territories are not 'States' within the meaning of the Fourteenth Amendment." 109 L.Ed 2d at 172 (quoting *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973)). *See also Banks v. American Samoa Government*, 4 A.S.R.2d 113, 128 n.7 (1987); *Ferstle v. American Samoa Government*, 4 A.S.R.2d 160 (1987).

3

that in relation to automobiles "[t]here is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passerby or diligent police officers." *Id.* (citations omitted). Thus, and we so hold accordingly, the viewing of the butts by officers Letuli and Maifea was not a search within the meaning of the Fourth Amendment and, hence, our counterpart Rev'd. Const. Am. Samoa art. 1, § 5.

On the evidence, we are further satisfied that officers Letuli and Maifea had come across the butts inadvertently. There was nothing in the evidence to suggest that the officers knew in advance that they would find marijuana butts, or roaches, which they intended to seize without a warrant; neither was there anything to suggest that they were using the traffic laws to stop the defendant's vehicle while relying on the "plain-view" doctrine as a pretext for a drug search.

The third of the *Coolidge* requirements is whether it was "immediately apparent" to the officers that the butts may be marijuana roaches. The Supreme Court also clarified in *Texas v. Brown,* that despite the unhappy choice of words in the phrase "immediately apparent," the *Coolidge* court did not mean that a police officer must "know" the incriminating nature of the evidence. To permit a warrantless seizure, the Fourth Amendment only requires that the officer must have "probable cause" to believe that the item found in plain view is incriminating. *Id.* at 741. In reviewing probable cause, the Court cautioned that

> [t]he process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same --- and so are law enforcement officers. Finally, the evidence must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id.* at 741 (quoting *United States v. Cortez,* 449 U.S. 411, 418 (1981)).

In the present matter, defendant argues that two butts in a vehicle's ashtray, which is designed to store cigarette butts, are insufficient circumstances to permit a conclusion of probable cause that the butts are other than tobacco. The defense further argues that a ruling

4

in favor of the government would encourage the police to stop anyone who is seen in public with a butt. To demonstrate his point, the defendant produced a number of tobacco butts which the officers acknowledged on the stand as looking something like the butts they saw on the evening of March 6, 1990.

The defense's demonstration misses the mark altogether. It clinically demonstrates *possibilities* rather than "practical, nontechnical" *probabilities*, spoken of in *Brinegar v. United States*, 338 U.S. 160, 176 (1949). For instance, the concerns raised about harassment of the smoking public is more fancied than real. In terms of probabilities, those people who smoke in public are more likely to be tobacco users rather than marijuana users. Why? Because there is a law against the possession of marijuana which discourages its public use; not so in the case of tobacco. Further, the defense's in court demonstration simply fails to account for the requirement that an assessment of probable cause must be based upon "all the circumstances." *United States v. Cortez, supra* at 418. The significance, therefore, of a rolled butt's twisted ends, which according to officer Maiava is a relevant identification factor, is a consideration in assessing probable cause. Twisted ends generally means preservation for further use and, in our opinion, when viewed in light of the fact that marijuana is not as readily available as tobacco --- there is a law against the possession of marijuana --- the officers were certainly presented grounds to conclude that it was more probable than not that the butts, twisted at the ends, were marijuana rather than tobacco. Further, and in the light of the fact that tobacco is more readily available than marijuana, tobacco butts in a vehicle's ashtray would be more consistent with circumstances of disposal rather than of preservation --- people do not preserve tobacco butts. However, what the officers actually viewed in the ashtray can hardly be said to be consistent with disposal. Besides the butts, there was currency, hardly the sort of thing one would expect to find in a vessel which is used to extinguish and discard burning tobacco butts as well as cigarette ash. Notwithstanding the purpose for which an ashtray is designed (a feature heavily relied upon by the defense as discounting probable cause), the ashtray in question appeared at all relevant times to be used for storage; a use not inconsistent with the preservation of such things as marijuana roaches. Finally, a reviewing court must not be unmindful of the officers' police training and experience which allows them to draw and make from all sorts of available data, such "inferences and deductions that might well elude an untrained person." *United States v. Cortez, supra,* at 418. Their collective knowledge as well is a factor for regard in the equation.

*U.S. v. Wiley*, 673 F.Supp. 1405, 1409 (E.D. Va. 1987).[2] Here the effect of officer Letuli's testimony was that he was not new to marijuana cigarettes. He had seen many such cigarettes as a policeman and during his college days. At the same time, officer Maifea testified that when he had encountered the defendant, he was very evasive and generally acted as if he something to hide, while officer Maiava informed the Court that his office has had the defendant under surveillance for some months. The latter at least had the "generalized expectation" spoken of in *Texas v. Brown, supra* at 744, and albeit a factor hardly significant in and of itself, it is nonetheless a building block in the total picture. Additionally, officer Maiava was very much influenced by the appearance of the butts, the manner in which they were rolled, the twisted ends, and the way they were set aside.

We conclude on the experience of the officers, together with the appearance and location of the butts, that probable cause existed for warrantless seizure of incriminating evidence. The motion is denied.

It is so Ordered.

---

[2] The facts of this case are very similar to the matter at bar.