## State v. Colbert
*[Cite as 2 AOA 11]*

*Case No. C-880471*
*Hamilton County, (1st)*
*Decided March 7, 1990*

*4th & 6th Amend. U.S. Const.*
*R.C. 2925.01*
*R.C. 2941.14.2*

*Arthur M. Ney, Jr., Prosecuting Attorney, and Christian J. Schaefer, Esq., 420 Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio 45202, for Plaintiff-Appellee,*

*Robert R. Hastings, Jr., Esq., 22 West Ninth Street, Cincinnati, Ohio 45202, for Defendant–Appellant.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and the arguments of counsel.

Defendant-appellant Herschel Colbert appeals from his conviction of one count of aggravated trafficking, a violation of R. C.

2925.03(C), and one count of drug abuse, a violation of R. C. 2925.11, each count containing a specification that he had been previously convicted of an offense of violence, namely, murder. Colbert, by his counsel, challenges the trial court's denial of his motion to suppress evidence allegedly seized without probable cause on the basis of unreliable information. In other assignments advanced by counsel, Colbert claims that the verdict is contrary to law because the state failed to prove that the controlled substance, oxycodone, exceeded the bulk amount specified by statute; that the trial court erred by making repeated references to the nature of the offense used to prove the specification to each count, and by its presentation of written instructions to the jury when none were requested. Colbert also claims he was denied effective assistance of counsel. In *pro se* assignments of error, he further challenges the sufficiency of the evidence on the ground that a chemical analysis of only a random sample of the contraband was conducted, and asserts that his Fourth Amendment rights were violated by a search and seizure that were based on an unreliable anonymous tip.

We find none of these contentions to be well taken.

The events culminating in Colbert's arrest on February 10, 1988, began approximately one week earlier, when Cincinnati Police Officer Mike Zwick was told by a confidential informant that an individual named Herschel Colbert was selling Percodan from a silver, two-door Honda Prelude parked on Dayton Street, under terms arranged at a nearby bar called "Trotter's Cafe." After monitoring the area for approximately one week for the presence of a car matching the description given him, Officer Zwick noticed Colbert's unoccupied car parked in the vicinity on the night of February 10, and conducted a check of the vehicle's registration which indicated that its owner was Herschel Colbert. Officer Zwick was then joined by Police Officer Ramon Turner, who assisted in the surveillance of the car. Approximately twenty minutes later, Colbert approached the car and entered it from the passenger side. Officer Zwick saw Colbert moving inside the car, looking down, and as he approached the car, he saw Colbert holding in one hand, an opened vial containing yellow pills, and in the other, several more pills. Zwick then opened the car door and informed Colbert that he was under arrest. Officer Turner aided in the arrest, but testified at trial that although he saw Colbert pouring

something from a vial into his hand, he was unable to identify the pills before the arrest.

The police recovered eighty-two Percodan pills, fifteen of which were tested for and found to contain oxycodone, a Schedule II controlled substance. The eighty-two pills recovered weighed 40.98 grams, but the actual weight of the oxycodone present in the pills was not determined.

Colbert's first assignment of error challenges the trial court's denial of his motion to suppress. Colbert's seventh, *pro se* assignment of error also challenges the warrantless arrest on Fourth Amendment grounds, and although this assignment is not addressed to any particular error of the trial court, we choose to subsume it in our discussion of the first assignment of error. Both assignments of error assert that the information provided to Officer Zwick by the confidential informant did not constitute probable cause for a warrantless arrest and seizure under the "totality of the circumstances" test of *Illinois v. Gates* (1983), 462 U. S. 213, 103 S. Ct. 1535. We do not agree.

This court has held that police have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable informant is subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers. See *State v. Bronner* (Aug. 16, 1989), Hamilton App. No. C-880364, unreported; *State v. Roll* (Aug. 31, 1988), Hamilton App. No. C-870625, unreported; *State v. Quinton* (Oct. 28, 1987), Hamilton App. No. C-860846, unreported; *State v. Darding* (June 3, 1987), Hamilton App. No. C-860514, unreported; *State v. Traver* (Oct. 19, 1983), Hamilton App. No. C-820410, unreported.[1] In this case, Officer Zwick testified that the informant had proved to be reliable numerous times in the past. The details of the tip were corroborated with respect to the suspect's identity, the location of the illegal activity and the description of the suspect's car. The suspect was observed holding the contraband immediately before the arrest. The fact that the information was one week old at the time of the arrest and search did not render it unreliable, because it is apparent that the informant's account involved ongoing activity. Accordingly, we overrule Colbert's first and seventh assignments of error.

In the second assignment, Colbert claims that the verdict, at least with respect to the count of aggravated trafficking, is contrary to law because the state failed to prove that the controlled substance, oxycodone, exceeded the "bulk amount" specified by R. C. 2925.03(A)(4). Colbert claims that the state's proof was insufficient because the tests made by its drug analyst determined only the weight of the compound containing the controlled substance, and not the weight of the oxycodone alone.

The weight of a controlled substance actually contained within a compound need not be determined, however. The term "bulk amount" is defined by R. C. 2925.01(E)(5) as:

*"[a]n amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual of a compound, mixture, preparation, or substance which is, or contains any amount of, a Schedule II opiate or opium derivative."* [Emphasis added.]

Proof that the compound containing the oxycodone weighed more than twenty grams was sufficient to satisfy the statutory definition of "bulk amount," and the verdict was therefore not contrary to law. Colbert's second assignment of error is overruled.

Colbert's sixth, *pro se* assignment of error is addressed to the fact that the state tested only fifteen of the eighty-two pills seized by the police for presence of the controlled substance. This contention is also not well taken because this court has held that it is unnecessary to test more than a representative sample of apparently identical items. *State v. Alfarano* (May 23, 1979), Hamilton App. No. C-780523, unreported. See also, *State v. Zimmer* (Apr. 4, 1984), Hamilton App. No. C-830583, unreported; *State v. Shaffer* (July 2, 1980), Hamilton App. No. C-790468, unreported.

Colbert's third assignment of error challenges the trial court's repeated references to the murder offense underlying the specification that he had committed a prior offense of violence, because he had previously agreed to stipulate to the specification.

R.C. 2941.142, in pertinent part, provides that:

"If an indictment, count in an indictment, or information that charges a defendant with an aggravated felony contains such a specification, *the defendant may request that the trial judge,* in a case tried by a jury, *determine the existence of* the specification at the sentencing hearing." [Emphasis added.]

This court has previously determined that the language of R.C. 2941.142 is mandatory and obligates the trial court to honor a defendant's request for a separate hearing. *State v. Watters* (1985), 27 Ohio App. 3d 186, 500 N.E.2d 312. It has also been held elsewhere that a trial judge commits prejudicial error by permitting evidence of the specification to go to the jury, once such a separate determination has been requested. *State v. Swiger* (1987), 34 Ohio App. 3d 371, 518 N.E.2d 972. However, a stipulation does not automatically preclude any mention of the prior offense to the jury in the absence of a request that the existence of the specification be determined separately at the sentencing hearing. We do not believe that the trial court erred in this case by mentioning, without objection, the prior murder offense while explaining the specifications to the jury, because no request for a separate determination was made by Colbert. Accordingly, Colbert's third assignment of error is overruled.

Colbert asserts in his fourth assignment of error that the trial court erred by presenting written instructions to the jury when neither party requested them pursuant to R.C. 2945.10(G). Although the trial court's provision of written instructions, *sua sponte*, may have been error, there is, on the state of this record, no demonstrable prejudice attributable to the court's action.[2] See Crim. R. 52(A). Colbert's fourth assignment of error is overruled.

Colbert's fifth assignment of error claims that he was denied effective assistance of counsel because his trial counsel (a) failed to thoroughly investigate the lighting conditions at the arrest site, (b) failed to call Officer Turner as a witness at the hearing of the motion to suppress, (c) failed to object to Colbert's being tried before the jury in jail clothes, (d) failed to object to the specification being mentioned before the jury and (e) failed to impeach Officer Zwick's testimony by pointing out discrepancies between the officer's trial testimony and his testimony at the suppression hearing.

We do not find Colbert's contentions to be well taken. Counsel's performance will not be deemed ineffective unless and until the performance is proved both to have fallen below an objective standard of reasonable representation and to have resulted in prejudice to the defendant. To show prejudice in counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St. 3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus. The first two deficiencies alleged by Colbert did not have a bearing on the resolution of the motion to suppress because Officer Zwick testified that from his position, before the arrest was made, he could see the contraband in Colbert's hands, illuminated by the car's overhead light. Officer Turner's inability to identify the contraband before the arrest did not contradict Officer Zwick's testimony. Given the overwhelming weight of the evidence presented at trial, we are not convinced that the remaining errors claimed in counsel's performance at trial affected the result of the trial. We therefore overrule Colbert's fifth assignment of error and, accordingly, affirm the judgment of the trial court.

*Judgment affirmed.*

SHANNON, P.J., DOAN and UTZ, JJ.

———

[1] When the tip is insufficiently detailed or corroborated by independent police observation, however, the totality of the circumstances does not support a finding of probable cause for the search and seizure of a suspect's car. See *State v. Kelley* (Aug. 30,1989), Hamilton App. No. C-880522, unreported.

[2] We noted in *State v. Emery* (Feb. 13, 985), Hamilton App. No. C-840102, unreported, that R.C. 2945.10 is to some degree in conflict with Crim. R. 30(A), which simply provides that instructions need not be reduced to writing, but we did not resolve the conflict because, as in the case before us, no prejudiced resulted from the trial court's actions.