**UNITED STATES of America, Plaintiff**

v.

**Dillis GOODEN, Defendant.**

**No. 91 CR 222(SJ).**

United States District Court,
E.D. New York.

Nov. 27, 1991.

Andrew Maloney, U.S. Atty., E.D. New York, New York City by Edward Mechmann, for plaintiff.

Casey Donovan, New York City, for defendant Gooden.

The Legal Aid Society, Brooklyn, N.Y. by Diane Renwick, for defendant Weatherspoon.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

On December 12, 1990, two U.S. Postal employees were robbed at gunpoint of $120,903.77 in cash and 17,280.82 in checks. Two witnesses identified the defendant and co-defendant Eric Weatherspoon as those who committed the robbery. Later that same day, several postal inspectors obtained an arrest warrant for the defendant Gooden.

On February 13, 1991, the defendant, Dillis Gooden, was arrested. On March 9, 1991, Gooden was indicted and charged with conspiracy, robbery and possession of a firearm during the commission of a crime. On April 5, 1991, the defendant filed a motion specifically to "suppress all property and items seized from the defendant's home as the result of an illegal search and any fruits obtained as a result of said illegal search." Records disclose that there was no written response to this motion until September 23, 1991.

On August 8, 1991, trial began before Judge Carol B. Amon. Inspector Harnois testified that on December 31, 1990, he and other postal inspectors forcibly entered the Gooden apartment to execute an arrest warrant. They conducted a sweep to find the defendant and to secure the premises. No one was home. While in the apartment, Harnois stated that he observed 9 millimeter ammunition in "plain view" in a safe that was lying on its back with the door open in a closet. Harnois did not take any notes of this event. No one seized the ammunition or attempted to obtain a

search warrant. In violation of F.R.Crim.P. 12, this was the first time the defendant was notified of the existence of this evidence. The defendant Gooden made a motion for a mistrial. The court granted this application.

The case was reassigned to this court on September 9, 1991. A motion to suppress was scheduled and held on September 23, 1991.[1]

At the hearing, Inspector Harnois substantially repeated the testimony he had given at trial. The defendant presented two witnesses, Lloyd Daniels, the superintendent of his building, and his father, Norris Gooden. Mr. Daniels testified that he observed the police coming in and out of the building starting at about 1:00 p.m. While he was fixing the door to the apartment between 4:00 and 5:00 p.m., Daniels met Mr. Gooden who was returning to the apartment.

Norris Gooden testified that he arrived home sometime after 4:00 p.m. Upon entering his apartment, N. Gooden observed clothes taken out of closets, the couch ripped, clothes on the floor and personal effects thrown off the bed. Norris Gooden had a friend take photographs of the condition of his apartment upon his entry. The photographs, marked A1–A16, were introduced into evidence.

The court credits the testimony of Norris Gooden and now makes the following findings of fact.

### FACTS

About 4:00 p.m., several United States Postal Inspectors obtained an arrest warrant for the defendant Gooden. They went to the defendant's residence at 20 Seagirt Avenue, Apartment 1A, Queens, New York and forcibly entered the apartment by knocking the door down. The postal inspectors immediately conducted a sweep of the apartment to secure the premises and to find the defendant. No one was home. Not one of the inspectors took notes of the events that occurred in the Gooden residence nor did any inspector assume control of the operation.

Based on the testimony of Norris Gooden and Defendant's Exhibits A1–A16 which are photographs that represent the apartment in substantially the same condition it was left by the postal inspectors, the court finds that the postal inspectors proceeded to ransack the Gooden apartment after they found no one in it. They tossed mattresses onto the floor, ripped the couch located in the Gooden living room and threw clothing from closets and drawers onto the floor. While they tore threw the Gooden closets, the inspectors came upon a small safe located in the closet of the defendant's bedroom.[2] One or more of the inspectors searched the safe and found the ammunition. Inspector Harnois observed it. Neither he nor any of the other postal inspectors seized the ammunition. The postal inspectors then departed from the apartment.

### DISCUSSION

The government seeks to introduce the testimony of Postal Inspector Harnois concerning his observations of 9 millimeter ammunition in the defendant Gooden's apartment. Such testimony is admissible if the ammunition was in "plain view" when the postal agents gained lawful entry into the apartment, *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2306 n. 5, 110 L.Ed.2d 112 (1990) (*citing Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983) (item seen in plain view does not involve a Fourth Amendment

---

1. Because the observation was made inside Mr. Gooden's apartment, only he has standing to bring this motion to suppress. Gooden's co-defendant, Eric Weatherspoon, has no reasonable expectation of privacy with respect to the Gooden residence. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (noting that the fundamental inquiry to be made as to whether the conduct that the defendant puts into issue involved an intrusion into

his reasonable expectation of privacy); *see also, Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

2. Outside of the closet there lies, on what appears to be dark wood shelf, a box of ammunition.

search), or if the ammunition was observed in the course of a lawful search. *See, Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 2532, 101 L.Ed.2d 472 (1988) (noting that the exclusionary rule prohibits the introduction into evidence of "testimony concerning knowledge acquired during an unlawful search").

■ The Fourth Amendment protects people against unreasonable searches and seizures. "[S]earches conducted outside the judicial process, without prior approval are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Horton, supra*, 110 S.Ct. at 2306 n. 4 (citing cases). One such exception is the so-called "protective sweep" of premises incident to an in-home arrest to protect the safety of police officers and others from an individual who is believed to pose a danger to those at the arrest scene. *See, Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 1094–95, 108 L.Ed.2d 276 (1990); *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983).

In this instance, the postal inspectors were executing an arrest warrant for a man suspected of committing armed robbery with a gun. Therefore, their entry into the apartment was lawful. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Moreover, the inspectors had a clear, reasonable belief that the defendant might be in the apartment, armed and dangerous. As such, had the postal inspectors simply conducted a security sweep upon their initial entry into the apartment and seen the ammunition, the testimony would have been properly admissible at trial. *Buie, supra.*

The Court finds, however, that the ammunition was not in "plain view" when the inspectors conducted their security check.[3] A protective sweep of the apartment to ensure safety included, no doubt, a quick look into the bedroom closet to ascertain whether the defendant was hiding in there. *Buie, supra.* But a proper, limited sweep

could not have revealed a box of ammunition that was tucked away inside a small safe that is incapable of harboring an armed individual.

To the contrary, based on the court's examination of photographs (Defendant's Exhibit A1–A16) taken of the apartment by Norris Gooden, we believe that after no one was found in the Gooden apartment, it was ransacked for evidence connecting defendant Gooden with the robbery. It was during this exhaustive, warrantless search that one of the agents came upon the ammunition that was placed inside the safe located in the bedroom closet.

The court finds the procedures used by the postal inspectors on December 31, 1990 highly suspect. Inspector Harnois did not make a report about his observing ammunition in the apartment of an individual wanted for committing armed robbery with a gun. Nor did anyone else take notes during the day-long surveillance operation. Not one inspector took charge of the operation. The inspectors did not seize inculpatory evidence that they allege was in plain view and never attempted to obtain a warrant based on the search that the government alleges was lawful. This curious conduct that represents a departure from standard operating procedure lends further support for the court's finding that the search of the Gooden apartment was not properly limited in scope to a "protective sweep".

The court finds that the postal inspectors performed a full-blown search of the Gooden apartment without a warrant and that such a search was *per se* unreasonable. Thus, defendant Gooden's Fourth Amendment rights were violated.

CONCLUSION

Because the ammunition was observed in the course of this unlawful search, the exclusionary rule requires suppression of Inspector Harnois's testimony as to his observations of the ammunition. *Murray, supra*, 108 S.Ct. at 2532. The government

---

**3.** It simply defies logic that a postal inspector as experienced as Inspector Harnois would have seen such highly inculpatory evidence (they were, after all, seeking to arrest the defendant for armed robbery) in "plain view" and not seized it.

is hereby prohibited from using this unlawfully procured evidence at trial.

SO ORDERED.