OPINION OF THE COURT
Philip J. Chetta, J.
By order to show cause dated February 11,1998 the plaintiff, the City of New York, obtained an order pursuant to the Nuisance Abatement Law (Administrative Code of City of NY § 7-701 et seq.) wherein both a temporary closing order and temporary restraining order were implemented against the subject premises commonly known as the “Turf Club Motel” upon allegations, inter alia, that numerous prostitution-related offenses were conducted therein. At the time of the execution of said order the New York City Police Department seized certain books, records, computer software, hardware and currency.
By order to show cause dated March 5, 1998 defendant seeks return of the seized property and access to the premises.
It is the position of the defendant that the plaintiff is without authority to exclude the fee owner, lessee or lessor from the premises and/or limit the amount of time he may remain therein. Simply, it is claimed that while a temporary closing order is merely meant to abate the alleged nuisance and a temporary restraining order is meant to preserve the premises, neither affect the claimed right of the fee owner to enter the property.
As noted, defendant claims that no authority exists to exclude the fee owner from the premises. However, a review of Administrative Code § 7-711 reveals that upon the execution of a temporary closing order:
(1) all persons present must vacate (Administrative Code §7-711 [d]);
(2) the premises must be securely locked (Administrative Code § 7-711 [d]);
(3) a notice of the temporary closing order must be affixed in a conspicuous place or upon an entranceway (Administrative Code § 7-711 [e]);
(4) mutilation or removal of such posted order can subject a person to penal sanctions of a fine of not more than $500 and/or imprisonment of not more than 90 days (Administrative Code § 7-711 [e]); and
(5) intentional disobedience to a temporary closing order can subject a person to additional penal sanctions of a fine of not *721 more than $1,000 and/or imprisonment not to exceed six months (Administrative Code § 7-711 [f]).
It is apparent upon a review of Administrative Code § 7-711 that despite the requirement that the key to the locked premises must be delivered by the police to the fee owner, lessor or lessee upon execution of the temporary closing order (Administrative Code § 7-711 [d]), all persons are excluded from the premises.
Contrary to defendant’s position, Administrative Code § 7-711 does not contain an exemption from its provisions for the fee owner, lessee or lessor. Simply, that provision which excludes all persons from the premises means just that — all persons.
This does not mean, of course, that the court is not aware of the need to inspect, maintain, repair and secure the premises in question.
Thus, defendant may, with court permission, be permitted limited access to the premises.
During the pendency of this motion, at the court’s suggestion, the parties have agreed to a stipulation of limited access, the terms of which the court finds acceptable. This stipulation of limited access to the premises provides in substance:
(1) that defendants have access to the premises for the purpose of maintenance, security and repair;
(2) access is limited to one day per week for two hours subject to prior notice to plaintiffs;
(3) if additional access is required defendant must notify plaintiff for a time, date and duration to be agreed to by the parties;
(4) defendants shall secure the premises at their own expense; and
(5) to the extent that any claims arise from entry into the premises pursuant to these provisions, defendant shall indemnify and hold plaintiff harmless.
As previously indicated on February 11, 1998 plaintiff executed the temporary closing order and temporary restraining order upon the subject premises. An inventory list of the property contained therein was compiled and subsequently submitted to the court. (Administrative Code § 7-711 [c].)
At the time of the execution of the above orders plaintiff, by its agent the New York City Police Department, took under its control certain property including but not limited to books, rec *722 ords, computer software and hardware and currency. During the course of the instant proceeding oral demand was made in open court for their return but refused by the attorney for the plaintiff who is also an attorney for the New York City Police Department.
The instant application has followed wherein defendant by written demand is seeking return of the above-described items.
Plaintiff attempts to justify its actions by asserting that the "property which was vouchered was not vouchered as part of an inventory search conducted under New York City Administrative Code § 7-711(c) but was taken for safe keeping”. It would appear that the plaintiff has confused its obligation to compile a list, schedule or enumeration of property with that of an "inventory search” which encompasses a search of property lawfully seized and detained in order to secure valuable items while they remain in police custody to protect against false claims for loss and damage. (South Dakota v Opperman, 428 US 364.)
Plaintiff’s claim that the property in question is merely being held for safekeeping is belied not only by the affidavit of its attorney and the supporting affidavit submitted in its reply, both of which assert that the property was also to be forfeited, but also by the endorsements contained on each of the three submitted property clerk’s invoices which indicate that the property vouchered was to be forfeited.
Plaintiff correctly avers that the New York City Police Department has an obligation to safeguard property and authority to seize and forfeit property which is contraband.
However, it is apparent that the police who were the executing agents on behalf of the plaintiff intended at all times to seize the property in question and not merely to safeguard it.
There is no question that police, when lawfully upon property (as they were in this situation), can seize items which they come upon which are readily associated with criminal activity, that is, contraband. (Arizona v Hicks, 480 US 321; Texas v Brown, 460 US 730.)
In order to justify the seizure in question, plaintiff claims that the items are subject to forfeiture. In support thereof it merely offers bald unsupported statements in an attempt to intimate that the seized items are associated with criminality. The reply is totally and completely devoid of any factual averments which would substantiate any claim of contraband or that they are involved in or associated with any criminal activity.
*723 Plaintiff who has been in possession of the items for over two months has yet to commence any forfeiture proceeding. It has totally and completely failed to establish a basis for the seizure, which appears to be based on nothing more than simply a guess or surmise of criminality.
In refusing to release the items plaintiff asserts that defendant’s claim for their return lies under Administrative Code § 14-140. Said statute provides that the Police Commissioner shall appoint a property clerk to take charge of certain described property. (Administrative Code § 14-140 [a] [1]; [b].) None of the seized items are included within this provision. (See, Administrative Code § 14-140 [b].)
Therefore it appears that Administrative Code § 14-140 is not implicated and its provisions do not apply.
Assuming arguendo that this statutory provision is applicable, the defendant’s request for the return of the items made in open court and this instant application may be considered a formal demand for their return.
In any event, plaintiff cannot avoid the consequences of the unauthorized seizure by hiding behind both the aforementioned provisions and upon the representation that it may, in the future, institute a forfeiture proceeding.
Accordingly, plaintiff is directed to return the seized items listed on the property clerk’s invoice numbers: H175719, H175723 and H175725.