Journal Entry And Opinion.
{¶ 1} Plaintiff-appellant State of Ohio appeals from the granting of defendant-appellee Joanne Darrah's ("Darrah") motion to suppress evidence. For the reasons adduced below, we affirm.
 {¶ 2} The record reflects that Darrah was indicted on one count of possession of drugs, to-wit, cocaine in an amount less than five grams, in violation of R.C. 2925.11. On May 31, 2002, Darrah's counsel filed a motion to suppress evidence. The court commenced an evidentiary hearing on Darrah's motion to suppress on June 4, 2002, the eve of trial.
 {¶ 3} The record reveals that on the evening of January 9, 2002, Cleveland Police Detective Thomas Lynch and his partner, Detective Chris Suchan, each with approximately seven years of service as officers, were dispatched to the vicinity of West 67th Street and Lorain Avenue on a complaint of alleged prostitution involving women flagging down passing vehicles. Lynch testified that he observed Darrah for approximately five to seven minutes from a block away as Darrah walked up and down a two to three house distance on West 67th Street and gestured to several passing cars. Suchan testified it was only after the officers parked that they observed Darrah gesture to passing cars. Lynch, when first asked about the nature of the gesture, initially could not remember, stating, "I don't remember exactly what she did. It's sometimes a wave. Sometimes its just a look. There is many ways. * * * I don't remember exactly what she did that night." When questioned by the court, Lynch stated that Darrah would raise her hand a little bit, two to three times in total, as a few vehicles passed in a five-minute time span. Suchan described the gesture as "slight hand gestures." Neither Lynch nor Suchan could recall what Darrah was wearing that night. Lynch knew Darrah from prior arrests as being a drug user and prostitute. Both officers stated that this gesturing was indicative of prostitution activity.
Lynch observed one car stop, Darrah run across the street to the passenger's side, lean into the window for approximately ten seconds and then get into the vehicle. Lynch and Suchan, who did not hear what was said between Darrah and the driver of the vehicle, ascribed this conduct as prostitution related. Lynch and Suchan followed this vehicle for a short distance before stopping it. Lynch removed Darrah from that vehicle and advised her that she was under arrest for violating Cleveland Codified Ordinance 471.06(d).[1] Darrah and the male motorist claimed to be friends. In fact, the male motorist, a foreign born man with an accent, gave the police Darrah's first name as "Juanna" when he spoke to the police at the scene, and Darrah knew the man's telephone number. Although Lynch and Suchan did not investigate further to confirm or disprove whether Darrah and the man actually knew each other, Suchan admitted that Darrah could have had a legitimate reason for having gestured to passing cars and gotten into a passing car. They did not observe money being transferred and the other man was not cited for any offense.
 {¶ 4} Suchan searched Darrah's purse incident to the arrest and found therein "a small piece of wire hanger," four to six inches in length, with suspected cocaine residue on one end of it. Lynch and Suchan testified that wires such as this are used to clean a crack pipe. No crack pipe or drugs were found in the purse. After finding the wire hanger, Darrah was advised that she was also under arrest for violating state drug law. Subsequent testing on the wire tested positive for cocaine.
 {¶ 5} On cross-examination, Lynch testified that Darrah, who lives in the area of the arrest, could also have friends in the area who drive and to whom she might wave as they pass on the street. Lynch also stated that it was his and Suchan's intent to arrest Darrah without a warrant at that point, prior to stopping the vehicle. Suchan also testified that Darrah was arrested for waving at passing cars, not for actually getting into the car.
 {¶ 6} The defense version of events differed from that offered by the state.
 {¶ 7} Darrah testified that she telephoned her friend, Mike, to pick her up that evening. She claimed that she saw Mike's car pull up and immediately went outside, hopped into the car and drove away, being stopped by police about a block away. Darrah, who denied waving at any passing car that night, claimed that she told the police that Mike was a friend and was not involved in anything and the police let him go. Darrah also claimed that she was not informed of the reason for the stop and was not advised of her rights prior to the police searching her purse incident to the arrest. She also stated that Lynch and Suchan, who do know her, regularly harass her whenever they see her on the street, and she denied ever being arrested by Lynch or Suchan. On cross-examination, Darrah admitted to having a felony drug conviction in 1999.
 {¶ 8} Mohammed Ghrib, a.k.a. Mike, a native of Morocco who was pursuing his Ph.D. in biochemistry, testified that he first met Darrah approximately six months prior to her arrest and considered her a friend. He corroborated Darrah's testimony regarding their arrangement to meet that evening and picking her up in his car, but he stated that it was he who telephoned Darrah that day to go out to dinner. He observed Darrah come out of her building that evening a few minutes after he first pulled up and she immediately got into his car. He never saw Darrah walk back and forth on the street or flag down any passing cars that evening. He next stated that he told the police that Darrah was a friend and gave them Darrah's pager number, and the police let him go on his way.
 {¶ 9} The court, based on a preponderance of the evidence standard, granted the motion to suppress on June 7, 2002.
 I. {¶ 10} The state's lone assignment of error from the suppression ruling states: "Whether The Trial Court Erred In Granting Appellee's Motion To Suppress As The State Met Its Burden."
 {¶ 11} Evidence obtained as a result of an illegal arrest is inadmissible at trial. Wong Sun v. United States (1963), 371 U.S. 471,83 S.Ct. 407, 9 L.Ed.2d 441. Appellant argues that the warrantless arrest of Darrah was supported by probable cause; appellee disagrees.
 {¶ 12} This court recently iterated the following standard with respect to a motion to suppress based on a lack of probable cause to arrest:
 {¶ 13} "* * * at a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." Statev. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, upon review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. The appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141.
 {¶ 14} "Probable cause for an arrest exists where, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man to believe that the accused had committed the offense. Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225, 13 L.Ed.2d 142; State v. Timson (1974), 38 Ohio St.2d 122,311 N.E.2d 16." City of Strongsville v. Minnillo, Cuyahoga App. No. 80948, 2003-Ohio-162, at ¶ 26-27.
 {¶ 15} In addition, "probable cause is a pliant common sense standard that requires only a showing that a probability, rather than an actual showing, of criminal activity existed. Texas v. Brown (1983),460 U.S. 730, 732, 75 L.Ed.2d 502, 103 S.Ct. 1535; Illinois v. Gates
(1983), 462 U.S. 213, 245, 76 L.Ed.2d 527, 103 S.Ct. 2317." State v.Terrell, Cuyahoga App. No. 80676, 2002-Ohio-4913, at ¶ 15.
 {¶ 16} In the present case, the detectives testified that they had made the decision to arrest Darrah on the municipal ordinance violation as soon as, from a block away, they observed Darrah wave her hand several times in a subtle fashion, which caused Mike to stop his car. The totality of the circumstances surrounding the officers' observation suggests that a prudent person, without more to confirm or dispel whether the subject's gesturing was incidental to a lawful use, such as waving at a friend's car to signify that the subject was acknowledging the friend's presence, would not conclude that Darrah committed a violation of Cleveland Codified Ordinance 471.06(d). Accordingly, the trial court, after assessing the evidence and weighing the credibility of the witnesses, did not abuse its discretion in granting the motion to suppress the drug evidence seized in the search incident to the arrest.
Judgment affirmed.
ANNE L. KILBANE, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Cleveland Codified Ordinance 471.06(d) provides: "No person shall stand on a street or highway and repeatedly stop, beckon to, or attempt to stop vehicular traffic by hailing, waving arms or making other bodily gestures."