# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Commonwealth of Virginia

v.

John S. Miller

September 13, 2011

Case No. CR10-2157

By Judge John W. Brown

This matter is before the Court on the Defendant's motion to suppress the twenty-nine methadone pills discovered by Detective Jeff Mills in an envelope in the glove compartment of a pickup truck parked behind the defendant's business. The issues raised in this motion are:

(1) Was the vehicle that Detective Mills searched pursuant to the search warrant within "the curtilage" of the business property; and

(2) Were the pills discovered within the bank envelope properly seized under the doctrine of "plain view"?

## I. *Facts*

On October 29, 2009, the Virginia State Police obtained a warrant to search the business premises of defendant, Chesapeake Core Supply, located at 1751 West Road in Chesapeake, Virginia, for evidence in connection with insurance fraud and, specifically, papers, documents, and the like. The state police enlisted the Chesapeake Criminal Investigations Section for extra manpower to carry out the search. Detective Jeff Mills, a member of the Chesapeake Vice and Narcotics (a subdivision of Chesapeake Criminal Investigations), assisted with the search. After searching inside the building, he helped a state police officer search an unlocked business

vehicle, a Ford F-150 pickup truck, that was located in a parking lot adjacent to a warehouse-type building that was attached to the main building. The state officer searched the driver's side, where a file with papers was visible, and Mills searched the passenger's side. Mills opened the glove box and found a BB&T envelope that contained the pills that are the subject of the suppression motion.

## II. *Discussion*

### A. *Business Curtilage*

In this case, the warrant allowed authorities to search the business for documents, records, electronic storage devices, and files. Initially, the issue was whether business properties have a curtilage as defined and applied to residential searches and then whether the truck search was proper since it was not specifically described in the warrant.

Curtilage appurtenant to a dwelling has been defined as the "space necessary and convenient, habitually used for family purposes and the carrying on of domestic employment; the *yard*, garden, and field which is near to and used in connection with the dwelling." *Kearney v. Commonwealth*, 4 Va. App. 202, 204–05 (1987) (*quoting Patler v. Commonwealth*, 211 Va. 448, 451, 177 S.E.2d 618, 620 (1970), *cert. denied*, 407 U.S. 909 (1972)). The Fourth Amendment applies to commercial premises, *see United States v. Hall*, 47 F.3d 1091 (11th Cir.), *cert. denied* 516 U.S. 816 (1995), but whether such commercial establishments have adjoining areas akin to residential curtilage is an unsettled question of law. *See generally* J. Richard Broughton, *"Business Curtilage and the Fourth Amendment: Reconciling* Katz *with the Common Law*, 23 Del. J. Corp. L. 513, 527–42 (1998) (noting that there is a split among federal and state courts on whether to recognize the concept of business curtilage). *Compare United States v. Swart*, 679 F.2d 698, 699–703 (7th Cir. 1982) (recognizing a reasonable expectation of privacy in the area outside the garage of a closed business premises), *with United States v. Wolf*, 375 F. Supp. 949, 958 (E.D. Pa. 1974) (concluding that the term curtilage has no application to any building other than a dwelling).

The Virginia courts have recognized the concept of business curtilage. In *Douglas v. Commonwealth*, an unpublished opinion, the Virginia Court of Appeals stated the legal theory of the Court in this regard and gave the factors of that case that led to its decision. *Douglas v. Commonwealth*, 1997 Va. App. LEXIS 532 at *10. The court emphasized the factors to consider in business property: whether it was used to serve the business's customers, whether there were "no trespassing" signs, and whether the property was fenced-in. *Id.* at *11–12. All of the above were recognized by the Court as reasonable indications that visitors were not welcome and "manifested a reasonable expectation of privacy." *Id.* at *12.

The Virginia Court of Appeals analyzed the factors that give rise to a reasonable expectation in business curtilage more thoroughly in *Johnson v. Commonwealth*, 26 Va. App. 674 (1998). The court held that the reasonable expectation of privacy arises from evidence of the building or premises being closed to the public. *Id.* at 685. Such evidence includes the posting of signs and erection of barricades, the proximity of the curtilage to the protected premises, whether the curtilage is enclosed, and the way in which the curtilage is used. *Id.* at 685–86.

In this case, the evidence presented was devoid of any testimony that the property was closed to the public by virtue of being surrounded by fences, having "no trespassing" signs posted, or containing any other indication that the area was private. Therefore, the Court finds that the defendant did not have a reasonable expectation of privacy in the curtilage, the designated parking spaces for employee and visitor vehicles on the premises, in which the vehicle in question was searched.

## B. *"Plain View"*

The second issue dealt with the seizure from the truck of the bank envelope itself. The Commonwealth justifies its seizure by its observation under the Plain View Doctrine. The Plain View Doctrine "[P]rovides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Texas v. Brown*, 460 U.S. 730, 738 (1983). In *Coolidge v. New Hampshire*, the Court held that three requirements must be met to satisfy the doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). First, the officer must have lawful access to the place in which the object is found and lawful right of access to the object itself. *Id.* at 466 ("What the "plain view" cases have in common is that the police officer in each of them had a prior justification for [the] intrusion. . . ."). Secondly, the Court in *Coolidge* required that the police inadvertently discover the item, but since then, the Court in *Horton v. California* has eliminated this factor. *See Horton v. California*, 496 U.S. 128 (1990) ("We conclude that, even though inadvertence is a characteristic of most legitimate `plain view' seizures, it is not a necessary condition."). The third requirement is that it must be immediately apparent that the item viewed is evidence of criminal activity or contraband. *See Coolidge*, 403 U.S. at 466 ("[T]he 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.").

This third requirement is the focal point of defense counsel's argument. Counsel for the defendant does not argue that the police did not have a right to open the envelope but rather alleges that the evidence supports the view that the officer did not immediately know of what substance the white pills in the bank envelope were made. The testimony was that it

was not until Detective Mills removed one pill and viewed the "M 5755" stamp that he knew it was a controlled substance. The identity of the pills as methadone, however, was not known until ten minutes later when Detective Mills telephoned an associate back at the Office of Vice and Narcotics and that unidentified individual consulted a controlled substance identification manual. Defense counsel suggests that, since the officer did not recognize the pills as an identifiable controlled substance upon first viewing, he violated the "immediately apparent" requirement of the Plain View Doctrine.

Counsel for the defendant states that the officer could not determine whether the pills were evidence of a crime or contraband simply upon seeing them. He relies on the officer's admission that, when he first saw the pills in the envelope, he did not know what they were. The officer did not testify as an expert, nor did he state that, based on his experiences or training, he recognized or suspected the white pills to be contraband. He did not testify that the number of pills was unusual or that their shape or color was similar to other controlled substances that he had seized on earlier occasions. It was not until he removed one pill and saw the stamped markings that he knew it was a controlled substance.

The Commonwealth, on the other hand, rests the majority of its argument on the fact that the pills were not in any packaging utilized in normal commercial distribution but were in a bank envelope in the glove box of a motor vehicle. It states that the phrase "immediately apparent" does not require that the police officer *know* that the item is contraband or evidence of a crime before seizing it and cites *Ruffin v. Commonwealth. See Ruffin v. Commonwealth*, 13 Va. App. 206, 209 (1991). The Commonwealth is correct in its assertion, but the testimony of Detective Mills does not support a finding of probable cause. *See* Transcript of August 4, 2011, Hearing at 25.

The United States Supreme Court in *Texas v. Brown* stated that the phrase "immediately apparent" was an "unhappy choice of words" because it implies that an unduly high degree of certainty as to the incriminatory character of the evidence is necessary. *See Texas v. Brown*, 460 U.S. 730, 741 (1983). As long as the officer has probable cause to associate the item with criminal activity, the seizure does not violate the Fourth Amendment. *Id.* at 738. The officer's belief does not even have to be more likely true than false; instead, the officer must rely on his common sense and experience to make a probable cause determination. *Id.* at 742. Virginia courts have also utilized the common sense "probable cause" approach. *See, e.g. Carson v. Commonwealth*, 12 Va. App. 497, 501–03 (1991).

In this case, the officer clearly had a right to open the bank envelope to look for paperwork or electronic storage devices that were the subject of the search warrant. The resolution of this issue turns on whether probable cause existed to associate the seized property, the white pills, with criminal activity.

This case requires an analysis of *Arizona v. Hicks*, 480 U.S. 321 (1987). In that case, the police entered the suspect's apartment to search for the suspect himself, for the victims, and for weapons. *Id.* at 323. While in the apartment, an officer moved two pieces of stereo equipment to read their serial numbers in order to see if the equipment was stolen. *Id.* The Court found that the police only had reasonable suspicion, and not probable cause, to believe that stereo was stolen and that the act of moving the stereo constituted a search that violated the Fourth Amendment. *Id.* at 329.

In that case, as in this, the issue of manipulation comes to the forefront. Without moving the television in *Hicks*, the officer would not have been able to see the serial numbers, call it in, and determine the item to be stolen. Here, only by withdrawing a pill from the envelope and calling in the imprinted letter and numbers did the officer realize that the substance was methadone. *See Commonwealth v. Grimstead*, 12 Va. App. 1066 (1991); *Matthews v. Commonwealth*, 218 Va. 1 (1977).

While the manner of storage of the pills in a bank envelope was unusual in that citizens do not store over-the-counter pills in a bank envelope in the glove compartment of their cars, Detective Mills failed to testify as to this suspicious manner of storage when he discovered the pills or how he connected that storage method to contraband. *See id.* This lack of testimony distinguishes this case from others in which courts found no Fourth Amendment violation. *See, e.g., Texas v. Brown*, 460 U.S. 730, 738–42 (1983); *Carson v. Commonwealth*, 12 Va. App. 497 (1991); *Ruffin v. Commonwealth*, 13 Va. App. 206 (1991). Absent such testimony, removing the pill from the envelope is akin to moving the stereo equipment that was found to violate the Fourth Amendment in *Hicks*.

### III. *Conclusion*

The Court finds that Defendant's motion to suppress the white pills in the bank envelope should be denied on the grounds that the vehicle in which they were seized was not located on business curtilage but granted in that the evidence fails to show that Detective Mills had probable cause to seize a pill from the envelope. Detective Mills manipulated the pill for a closer examination to determine if it was a controlled substance, in violation of the Fourth Amendment.

No motion was made with regards to the vial of pills found in the console and no evidence offered other than the fact that there were 156 total pills colored white, yellow, and purple in a pill bottle. In that the defendant alerted the police to these pills, that the pill bottle itself would have been seen or discovered during the search of the console, and that said pill bottle was discovered *after* the discovery of the 29 pills in the bank envelope, the facts surrounding those pills and the analysis to be employed at this juncture is quite different. Therefore, for those reasons, the pill bottle and

whatever was contained therein, if a source of criminal charges against the defendant, remains before the Court for consideration.

Also, the Commonwealth's request to reopen the hearing for additional evidence is denied.