NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1207
_____

UNITED STATES OF AMERICA

v.

DAVID BALLARD,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 1-11-cr-00455-001)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2013

Before:  JORDAN, VANASKIE and VAN ANTWERPEN, *Circuit Judges*.

(Filed: January 6, 2014)
_____

OPINION
_____

JORDAN, *Circuit Judge*.

David Ballard appeals his conviction on seven counts of mail fraud and five

counts of aggravated identity theft, as well as the sentence imposed by the United States

District Court for the Eastern District of Pennsylvania.  Ballard seeks a judgment of

acquittal or a new trial or, in the alternative, resentencing.  For the reasons that follow, we will affirm the judgment of the District Court.

## I.    Background

On April 7, 2011, Philadelphia police obtained a warrant (the "First Local Warrant") to search a storage unit rented by Ballard at a Safeguard Self Storage ("Safeguard") facility in Philadelphia.  The warrant was supported by an affidavit provided by Detective James Sloan, saying that, based on observations made by management personnel at Safeguard, it was believed that flat screen televisions and game systems that had been reported stolen out of other Safeguard storage units would be found in Ballard's unit.  The warrant listed burglary, theft, and receiving stolen property as the crimes Ballard was believed to have committed.  It specifically identified the following items "to be searched for and seized":  "2 42[-inch] plasma [televisions], PlayStation 3 game system, [Xb]ox game system, Nintendo [g]ame[] system, 1 Scepter 37[-inch] flat screen [television], and any other items of evidentiary value[.]"  (Supp. App. at 78.)

Detective Sloan went to Safeguard and executed the warrant with Detectives Timothy Hartman and Michael Acerenza.  The officers found some of the items explicitly identified in the warrant in Ballard's storage unit, as well as other electronics.  During the search, the officers opened boot-sized shoe boxes and a milk crate that were in the storage unit.  Inside the boxes, they discovered over 500 credit report printouts, as well as a variety of personal identifying information and identification cards – social security

2

cards, driver's licenses, health insurance cards, school ID cards, and a library card – that were not in Ballard's name.

While the officers were executing the search warrant, Ballard arrived at the storage unit and identified himself. The officers placed Ballard under arrest and, incident to the arrest, conducted a search of his person and a bag he was carrying. That search yielded an Apple iPod, a cellular phone, and an Apple laptop. The officers also found notebooks in both the storage unit and on Ballard, which contained personal identifying information of other individuals, as well as order numbers and descriptions of various items.[1]

On April 9, 2011, the Philadelphia police obtained a second warrant (the "Second Local Warrant") to search the Apple laptop, iPod, and cell phone that had been seized. On April 28, 2011, Philadelphia police obtained a third search warrant (the "Third Local Warrant") to obtain information regarding the purchase of the Apple laptop and iPod, stating in an attached affidavit that a search of the Apple laptop and iPod had yielded "additional (over 1,000) personal information [sic] from persons other than [Ballard]" and that "[f]urther investigation revealed that numerous electronic devices … were ordered fraudulently using the information found in these devices." (*Id.* at 38.) Thereafter, at the suggestion of the Philadelphia police, the FBI handled the case and obtained a warrant (the "Federal Warrant") to search Ballard's storage unit for "further evidence of [Ballard's] identity theft scheme." (*Id.* at 48.)

---

[1] It is unclear which notebooks were recovered from Ballard's storage unit and which were found on his person.

A grand jury indicted Ballard in the Eastern District of Pennsylvania on eight counts of mail fraud, in violation of 18 U.S.C. § 1341 ("Counts 1-8"), and five counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5) ("Counts 9-13"). Ballard filed a motion to suppress any evidence that was obtained from the execution of the three Local Warrants and the Federal Warrant. After holding a suppression hearing, the District Court denied Ballard's motion to suppress in a memorandum opinion and order, and the case proceeded to a jury trial.

At trial, witnesses testified regarding seven instances of receiving packages for electronics that they had not purchased. The witnesses also testified to receiving bills for credit card accounts that they had not opened. The credit reports, identification cards, and notebooks in Ballard's possession contained the personal identifying information of each of the witnesses. Ballard presented no evidence. The jury found him guilty of Counts 1-4 and 6-8 for mail fraud, and Counts 9-13 for aggravated identity theft.[2]

At the sentencing hearing, FBI Special Agent Mackenzie Monarko testified that she created a spreadsheet with the names of victims. After eliminating people whose names appeared more than once, she determined that Ballard had possessed personal identifying information of 1,312 individuals. Based on "notes about orders placed," Special Agent Monarko estimated that Ballard actually used the information for over 600 of the 1,312 individuals to make purchases at the Home Shopping Network, Fingerhut,

---

[2] Count 5, which charged mail fraud, had been dismissed on the government's motion.

Dell, and Bill Me Later (collectively, the "four vendors"). (App. at 89-91.) The four vendors suffered estimated losses of $111,925.86 from the fraudulent orders.

A Presentence Investigation Report ("PSR") was prepared, employing the United States Sentencing Guidelines. For the mail fraud counts, the PSR reflected a total offense level of 21, beginning with a base offense level of 7; adding an 8-level enhancement for the amount of the loss, pursuant to § 2B1.1(b)(1)(E); and, pursuant to § 2B1.1(b)(2)(C), adding a 6-level enhancement because Ballard's offense involved 250 or more victims. Applying the total offense level of 21 and a criminal history category of I, the Guidelines imprisonment range for the mail fraud counts was 37 to 46 months. The District Court adopted the PSR and imposed a 46-month sentence for the mail fraud counts, to run consecutively with a mandatory 24-month sentence for the counts of aggravated identity theft, for a total of 70 months' imprisonment. This timely appeal followed.

## II.    Discussion[3]

Ballard argues that the District Court erred when it denied his motion to suppress. He also contends that he should be awarded a judgment of acquittal or a new trial because the evidence was not sufficient to sustain the jury's verdict. Alternatively, he asserts that we should remand for resentencing because the government did not prove, as required by the sentencing enhancement provision in U.S.S.G. § 2B1.1(b)(2)(C), that there were at least 250 victims of his crime. We address each of those arguments in turn.

---

[3] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

### A. *Motion to Suppress*

We "review[] the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

Ballard argues that all evidence seized during the execution of the search warrants should have been suppressed because (1) the First Local Warrant was facially invalid as a general warrant; (2) his Apple laptop was searched without a warrant; and (3) the Second and Third Local Warrants and the Federal Warrant were tainted as fruit of the poisonous tree. The government responds that the evidence obtained during the first search was seized pursuant to a valid warrant or in plain view and that the District Court did not clearly err in finding that the search of Ballard's Apple laptop was proper under the warrant. Because there were no constitutional defects in those searches, the government argues, the subsequent search warrants were not tainted.

As to the First Local Warrant, Ballard says it was an impermissible "general warrant [because it] include[ed] 'any other items of evidentiary value' among those items to be seized." (Appellant's Br. at 19.) The Fourth Amendment to the Constitution provides, in relevant part, that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. We have recognized that "[g]eneral warrants violate the Fourth Amendment because they essentially authorize 'a general exploratory rummaging in a person's belongings.'" *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (quoting *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 467 (1971)). To be valid, therefore, a warrant must "specify with particularity the place to be searched and the things to be seized … to the end that unauthorized invasions of the sanctity of a man's home and the privacies of life be prevented." *Andresen v. Maryland*, 427 U.S. 463, 492 (1976) (internal quotation marks omitted).

In *Andresen*, the Supreme Court considered the specificity of warrants which added "to the exhaustive list of particularly described documents [to be seized] … the phrase 'together with other fruits, instrumentalities and evidence of crime at this (time) unknown.'" *Andresen*, 427 U.S. at 479. The Court held that the language of a warrant is to be read in context. *Id.* at 480-81. Because the "other fruits" phrase was "limited by what precede[d]" it, *id.* at 481, namely, items relating to the crime of false pretenses with respect to a particular sale – not just any crime – "the challenged phrase … authoriz[ed] only the search for and seizure of evidence relating to the crime of false pretenses with respect to [that sale]." *Id.* at 480 (internal quotation marks omitted).

Similarly, the phrase "any other items of evidentiary value" that appears in the First Local Warrant was limited by the specified list of televisions and game systems believed to be stolen from other Safeguard storage units, and by the warrant's identification of the violations that were being investigated, namely, burglary, theft, and receiving stolen property. (Supp. App. at 78.) In addition, we have held that, "[w]hen a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant." *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982). Here, the First Local Warrant incorporated by reference Detective

7

Sloan's affidavit, which was directed solely to the investigation of stolen goods at the Safeguard facility. Thus, the warrant only authorized the executing officers to search for evidence of burglary, theft, or receipt of stolen property relating to the items that were reported stolen by Safeguard's customers.[4] When read in context, the phrase "any other items of evidentiary value" did not invalidate the First Local Warrant. *See United States v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1106 (3d Cir. 1989) ("Because the items to be seized were described with sufficient particularity, the general tail, which is not read in isolation, does not render the warrant invalid.").

Turning to the seizure of evidence of identity theft, the question becomes whether that seizure was proper under the "plain view" doctrine, which provides that police may "seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an intrusion on privacy.'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (quoting *Horton v. California*, 496 U.S. 128, 141 (1990)). For seizure of evidence in plain view to be valid, three conditions must prevail: first, "the officer must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed'"; second, "the incriminating character of the evidence must be 'immediately apparent'"; and third, "the officer must have 'a lawful right of access to the object itself.'" *Id.* at 559 (quoting *Horton*, 496 U.S. at 136). The

---

[4] The government also argues that, even if the First State Warrant lacked sufficient particularity, suppression of evidence was not appropriate because the detectives "execute[d] a search in objectively reasonable reliance on a warrant's authority." (Appellee's Br. at 44 (quoting *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001)) (internal quotation marks omitted).) Because the First State Warrant contained sufficient particularity, we need not reach that argument.

plain view doctrine is applicable when "the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Horton*, 496 U.S. at 135; *see also United States v. Stabile*, 633 F.3d 219, 241-42 (3d Cir. 2011); *Menon*, 24 F.3d at 560.

Because the First Local Warrant did not violate the Fourth Amendment and the officers were lawfully within Ballard's storage facility, the first "plain view" condition is met. As for the second condition – the requirement that the incriminating character of the evidence be immediately apparent – the Supreme Court has held that the condition generally requires that "there is probable cause to associate the property with criminal activity." *Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)). It does not require an officer to "know" that items are evidence of a crime, but "merely requires that the facts available to the officer would warrant a [person] of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime … ." *Id.* at 742 (citation omitted) (internal quotation marks omitted). Detectives Sloan and Hartman testified that they "immediately" recognized the printouts in the boxes as credit reports as soon as they saw them (Supp. App. at 114, 142), and the District Court credited their testimony. Given the volume of credit reports and personal identifying information that the officers found, it is clear that the officers executing the First Local Warrant had probable cause to believe that the items were evidence of identity theft or other criminal activity.

With respect to the third condition – the officers' lawful right of access to the objects – we have held that this requirement is met "if the [government] agent's search

9

fits within the literal terms of the warrant and is a reasonable means of obtaining the objects described in the warrant." *Menon*, 24 F.3d at 560. Detectives Sloan, Hartman, and Acerenza testified at the suppression hearing that they opened boxes in the storage unit to look for "stolen items" (Supp. App. at 109) or "electronics that could have been taken in the burglaries" (*id.* at 142). Detective Sloan explained that he was "looking for any items of evidentiary value … that could fit" in the boxes (*id.* at 113), such as "games, which could be CDs[,] … any paperwork for any of the[] items, … remote controls, cables, so forth" (*id.* at 102). The District Court found the officers "were all credible witnesses" (*id.* at 205), and determined that items within the scope of the First Local Warrant, such as gaming systems and electronic accessories, "were capable of fitting inside" the boxes that were searched. (*Id.* at 216.) In light of the evidence, the Court's factual finding that items within the scope of the First Local Warrant could have been in the boxes was not clearly erroneous. The officers' search of the boxes, therefore, was a reasonable means of executing the First Local Warrant, and the government met the "lawful right of access" condition for application of the plain view doctrine.

Therefore, all of the conditions for application of the plain view doctrine have been met. Although the credit report printouts, identification cards, and other evidence of identity theft were seized outside the explicit scope of the First Local Warrant, the seizure was valid under that doctrine.

Ballard also argues that the contents of his Apple laptop were searched without a warrant. As he did in District Court, he asserts that the April 8, 2011, "report date" of the affidavit attached to the Third Local Warrant, which noted the results of searching

Ballard's Apple laptop and iPod, indicates that the Apple laptop and iPod were searched before the Second Local Warrant authorizing their search was issued on April 9, 2011. However, Detective Geliebter testified that the April 8, 2011, date was a clerical error, which the District Court found to be credible. His testimony was corroborated by the date on the affidavit's seal and the date that the Third Local Warrant was issued – both April 28, 2011. The District Court found that, in light of this evidence, it was "satisfied that the Third [Local] Warrant, including the accompanying continuation of probable cause, was prepared and issued on April 28, 2011." (Supp. App. at 203 n.8.) We do not discern any error, let alone clear error, in that factual finding. Ballard's contention that his Apple laptop was searched before the Second Local Warrant issued is simply false.

Because the seizure of evidence pursuant to the First Local Warrant was lawful, Ballard's "fruit of the poisonous tree" argument fails. The subsequent Local Warrants and the Federal Warrant were all supported by probable cause stemming from evidence that had been lawfully seized. We will therefore affirm the District Court's denial of Ballard's motion to suppress.

### B.    *Sufficiency of the Evidence*

Ballard further argues that the District Court should have granted a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 because the government "failed to tie in enough of the important aspects … to make [its] case." (Appellant's Br. at 14.) In particular, he contends that there was no evidence presented at trial about how he would have obtained the personal information of the victims, ordered the credit reports, or orchestrated the fraudulent scheme.

11

Because Ballard did not timely file a motion for judgment of acquittal under Rule 29, we review his claim regarding the sufficiency of the evidence for plain error. *United States v. Wolfe*, 245 F.3d 257, 260-61 (3d Cir. 2001). "A conviction based on insufficient evidence is plain error only if the verdict 'constitutes a fundamental miscarriage of justice.'" *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir. 1999) (quoting *United States v. Barel*, 939 F.2d 26, 37 (3d Cir. 1991)).

Ballard fails to meet that high burden. "The elements of mail … fraud [under 18 U.S.C. § 1341] are (1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails … in furtherance of the scheme." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). An individual who "during and in relation" to a mail fraud offense "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" is also guilty of aggravated identity theft. 18 U.S.C. § 1028A. Ballard primarily challenges the proof of his role in the scheme. However, the government only needed to prove his participation, not how each detail in the scheme was devised or carried out. Additionally, jurors may infer the requisite knowledge and intent from circumstantial evidence. *See, e.g.*, *United States v. Riley*, 621 F.3d 312, 333 (3d Cir. 2010).

The government presented evidence that Ballard possessed either identification cards or personal identifying information for each of the five victims. The five victims identified in the indictment also testified regarding each instance of mail fraud and aggravated identity theft for which Ballard was convicted. The evidence presented at

12

trial was more than sufficient for a jury to find that the government had proven all of the

elements for each count of mail fraud and aggravated identity theft. Ballard has not met

his burden of showing that his conviction was infected by plain error.[5]

C.      *Resentencing*

Alternatively, Ballard argues that we should remand for resentencing because the

District Court erred in applying the 6-level enhancement under U.S.S.G.

§ 2B1.1(b)(2)(C) for crimes involving 250 or more victims. He asserts that the number

of victims should be limited to the four vendors because the government failed to prove

that any individual victims suffered even a temporary financial loss.

We exercise plenary review over a district court's interpretation of the Sentencing

Guidelines. *United States v. Moorer*, 383 F.3d 164, 167 (3d Cir. 2004). We review

factual findings that support Guidelines enhancements for clear error. *United States v.*

*Grier*, 475 F.3d 556, 590 (3d Cir. 2007) (en banc).

A showing of financial loss is not always necessary when determining the number

of victims for purposes of the § 2B1.1(b)(2)(C) enhancement. Application Note 4(E) to

§ 2B1.1 provides that, "[f]or purposes of subsection (b)(2), in a case involving means of

---

[5] Ballard also argues that the verdict was against the weight of the evidence, and that he should be granted a new trial under Federal Rule of Criminal Procedure 33. As just noted, however, the evidence was sufficient. Moreover, Ballard did not timely move for a new trial under Rule 33. Generally, when a defendant fails to move for a new trial, the district court has no motion upon which to exercise its discretion, and we are left without an exercise of discretion to review. *See United States v. Wright*, 363 F.3d 237, 248 (3d Cir. 2004) (noting that "we need not reach the merits of [appellant's] argument … [for] a new trial" because he failed to move for a new trial pursuant to Rule 33). Therefore, Ballard's Rule 33 argument is not properly before us.

identification[,] 'victim' means … any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E). "'Means of identification' has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (*i.e.,* not fictitious) individual … ." U.S.S.G. § 2B1.1 cmt. n.1. Under 18 U.S.C. § 1028(d)(7), "means of identification" includes, *inter alia*, "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any … name, social security number, date of birth, [and] official State or government issued driver's license or identification number." 18 U.S.C. § 1028(d)(7).

Special Agent Monarko estimated that Ballard purchased items fraudulently from the four vendors using the personal identification information of over 600 actual individuals. Even if this estimate was not precise, there was substantial evidence that Ballard's scheme involved at least 250 actual individuals "whose means of identification [were] used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E). The District Court thus did not clearly err in concluding that Ballard's scheme involved at least 250 victims and applying the enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(C).

## III.    Conclusion

For the foregoing reasons, we will affirm the conviction on all counts of mail fraud and aggravated identity theft, as well as Ballard's sentence.