**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2098
_____

UNITED STATES OF AMERICA

v.

KENNETH HUGH HAWKINS,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 1:14-cr-00002-1)
District Judge: Hon. David S. Cercone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 23, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, Circuit Judges.

(Filed:  April 7, 2016)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Kenneth Hugh Hawkins entered a conditional guilty plea to the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), preserving his right to appeal the District Court's order denying his motion to suppress evidence obtained after a traffic stop. For the reasons set forth below, we will affirm.

I

On August 7, 2013, at approximately 4:00 a.m., Erie Police Officer William Goozdich observed Hawkins driving a Jeep in a "high crime area." App. 152. Based on previous interactions with Hawkins, Goozdich knew that Hawkins did not have a driver's license and that he was a convicted felon. Goozdich "activated [his] lights and siren" behind the Jeep, but Hawkins did not immediately pull over. App. 149. Rather, Hawkins continued "driving at a very slow speed" and "moving [from] side to side" inside the vehicle until pulling over in a parking spot on the next block. App. 150. Having observed Hawkins's furtive movements, Goozdich was concerned that Hawkins "either [had] a possible weapon, or [was] reaching for something, or hiding something" in the vehicle. App. 151. Goozdich radioed other officers about the traffic stop and Officer Jerry Stevens, who was also familiar with Hawkins, agreed to provide backup.

Before Stevens arrived at the scene, Goozdich "approach[ed] the vehicle, informed Mr. Hawkins that he [wa]s not a licensed driver, and [] asked him [] for his keys,"[1] App. 151, because Hawkins was not permitted to drive. Goozdich asked Hawkins to remain in

---

[1] The Jeep was registered to Hawkins's girlfriend. Hawkins testified that he helped purchase and maintain the vehicle, "but it was in her name because [Hawkins] wasn't allowed to drive a vehicle" because he was unlicensed. App. 209. Hawkins also testified that he had a key and was free to drive the car but he did so only under "extreme circumstances," because he knew it was unlawful for him to drive. App. 210-11.

the vehicle and returned to his police cruiser. Once Stevens arrived, Goozdich apprised him of the situation, including Hawkins's behavior before pulling over, and asked him to prepare a tow receipt. Goozdich then approached the vehicle and asked Hawkins to exit. Hawkins exited the car and left the driver's door "wide open." App. 155-56. He submitted to a pat-down, after which Goozdich gave Hawkins a citation for driving without a license, explained that the vehicle would be subject to an inventory search and towed, and told Hawkins he was free to leave. Hawkins asked him not to tow the vehicle and then walked to the corner of the street. Once Hawkins crossed the street, Stevens approached the vehicle, stood near the open driver's door, shined a flashlight in the car, and noticed the handle of a fully loaded firearm sticking out from under the driver's seat. Stevens and Goozdich then arrested Hawkins.

A federal grand jury returned an indictment charging Hawkins with a violation of 18 U.S.C. § 922(g)(1). Hawkins filed a motion to suppress the gun, which he contends was the fruit of an illegal seizure that occurred after the initial traffic stop had concluded and incident to an illegal inventory search. The District Court denied the motion, concluding that the gun was properly seized under the plain view exception to the Fourth Amendment warrant requirement. Hawkins appeals.

II[2]

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's denial of

3

The Fourth Amendment protects citizens against unreasonable searches and seizures. "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'"[3] Horton v. California, 496 U.S. 128, 133 n.4 (1990) (quoting United States v. Ross, 456 U.S. 798, 824-25 (1982))(emphasis omitted).

One exception to the Fourth Amendment's warrant requirement is the plain view doctrine. See id. at 133. Three elements must be satisfied to seize an item under plain view: (1) "the officer [must] not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) the object's "incriminating character must also be immediately apparent"; and (3) the officer "must also have a lawful right of access to the object itself." Id. at 136-37 (internal quotation marks and

a motion to suppress for clear error as to its factual findings and exercise plenary review of its application of the law to those facts. United States v. Cortez-Dutrieville, 743 F.3d 881, 883 (3d Cir. 2014). Our review of factual findings "is more deferential with respect to determinations about the credibility of witnesses." United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997); see also United States v. Bansal, 663 F.3d 634, 664 (3d Cir. 2011) (explaining that defendant failed to show that the District Court committed clear error in finding, based on credibility determination, that search of car was conducted in accordance with standardized DEA procedures).

[3] A defendant seeking to suppress evidence pursuant to the Fourth Amendment's exclusionary rule "must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010) (citing Rakas v. Illinois, 439 U.S. 128, 132-34 (1978)). The Government argues that Hawkins was an unauthorized, unlicensed driver of the Jeep and therefore lacked a reasonable expectation of privacy in that vehicle. Because "standing to challenge a search is not a threshold issue that must be decided before reaching the question of whether a search was or was not constitutional," we will assume without deciding that Hawkins, who testified that he helped purchase the Jeep and could use it when needed, has "standing" to challenge the legality of the search of the car. United States v. Kennedy, 638 F.3d 159, 163 (3d Cir. 2011).

citations omitted); see United States v. Stabile, 633 F.3d 219, 241 (3d Cir. 2011)

(recounting elements). Under this doctrine, "if contraband is left in open view and is

observed by a police officer from a lawful vantage point, there has been . . . no 'search'

within the meaning of the Fourth Amendment—or at least no search independent of the

initial intrusion that gave the officers their vantage point." Minnesota v. Dickerson, 508

U.S. 366, 375 (1993).

Officer Stevens's observation of the gun from outside the Jeep satisfies all three

requirements. First, Goozdich conducted a valid traffic stop because he knew that

Hawkins was unlicensed and reasonably determined that Hawkins violated Pennsylvania

traffic laws by driving without a license.[4] See United States v. Delfin-Colina, 464 F.3d

---

[4] Hawkins does not challenge the validity of the stop. He does, however, argue that the stop had already concluded and the inventory search begun when Stevens approached the Jeep because the officers had already issued a citation, confiscated his keys, and told him to leave. Hawkins contends that the seizure was therefore unlawful because the officers found the gun while conducting an inventory search pursuant to an unlawful impoundment.

The District Court credited the officers' testimony that they had not yet commenced the inventory search at the time they found the gun, and we defer to such credibility determinations. See Igbonwa, 120 F.3d at 441. Moreover, even if the officers were motivated to conduct an inventory search at the time they approached the open car door, the Supreme Court "ha[s] been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." Whren v. United States, 517 U.S. 806, 813 (1996). Finally, even if they had commenced an impoundment and inventory search in a fashion "contrary to a standardized procedure," this does not constitute "a per se violation of the Fourth Amendment." United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008).

Hawkins also disputes the validity of the officers' decision to confiscate his keys in anticipation of towing the car. The officers appropriately did so pursuant to the "community caretaking" exception to the warrant requirement, established in Cady v. Dombrowski, 413 U.S. 433, 441 (1973), which allows "police with a non-law enforcement purpose to seize or search a person or property 'in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'"

392, 399 (3d Cir. 2006) ("In situations where an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional . . . .").

Second, the "'incriminating character'" of a revolver handle beneath a car seat previously occupied by Hawkins, a known convicted felon, was "'immediately apparent'" to Stevens. Horton, 496 U.S. at 136 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 446 (1971)).

Third, Stevens had "a lawful right of access," id. at 137, to "that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, 460 U.S. 730, 740 (1983). Any member of the public could have approached the vehicle and through the open door observed the revolver handle sticking out from under the driver's seat.[5] Id. ("[T]here is no reason [a police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen."); see, e.g., United States v. Bynum, 508 F.3d 1134, 1136-37 (8th Cir. 2007) (plain view exception applies where unlicensed defendant left driver's side door open when he exited the vehicle, officers later reapproached the vehicle to conduct an inventory search before impounding it and,

---

Vargas v. City of Philadelphia, 783 F.3d 962, 971 (3d Cir. 2015)(quoting United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993)). The officers testified that there was no indication that a licensed, authorized driver was available to pick up the car at 4:00 a.m. and they acted reasonably in deciding not to leave the car in a high-crime area where it was susceptible to theft or damage, even though it was lawfully parked.

[5] Stevens's use of a flashlight to observe the interior of the vehicle has no bearing on this analysis, because it is "beyond dispute that [an officer's] action in shining his flashlight to illuminate the interior of [a] car trenche[s] upon no right secured to the latter by the Fourth Amendment." Brown, 460 U.S. at 739-40.

6

before beginning the search, saw through the open door weapons and drugs on the floor of the car); <u>United States v. Sparks</u>, 291 F.3d 683, 691-92 (10th Cir. 2002) (plain view exception applies where defendant left the driver's side door open, officers arrested defendant at the rear of the vehicle, and then peered through the open door and observed plastic bags that appeared to contain drugs).

Accordingly, the requirements of the plain view doctrine are satisfied and the District Court properly denied Hawkins's motion to suppress.

III

For the foregoing reasons, we will affirm the District Court's order denying Hawkins's motion to suppress.